Jack K. JEANES et al, Petitioners,

v.

Cliff C. HENDERSON et al, Respondents.

No. C–3130.

Supreme Court of Texas.

March 27, 1985.
Rehearing Denied May 1, 1985.

C. Wesley Jeanes, Richardson, for petitioners.

Jones, Day, Reavis & Pogue, David J. White, Payne & Vendig, Lee D. Vendig and P. Talmage Boston, Dallas, for respondents.

RAY, Justice.

This is an appeal from a lawsuit seeking declaratory relief and damages in conjunction with an oil and gas contract. At issue is the applicability of the doctrines of res judicata and collateral estoppel. The trial court rendered summary judgment for defendants, Cliff C. Henderson, Robert B. Stallworth, Jr. and their respective companies, on the grounds that this suit is barred and litigation of the issues is precluded by the res judicata and collateral estoppel effects of a prior federal court judgment involving the same contract. In an unpublished opinion, Tex.R.Civ.P. 452, the court of appeals affirmed the judgment of the trial court. We affirm in part the judgment of the court of appeals, and we reverse and remand in part.

This cause is the result of a lawsuit filed by Omajeanne Lokey Mitchell against all the parties to this appeal and others to determine her royalty rights under certain oil and gas leases. After Mitchell took a nonsuit, this cause continued from a cross-action by Jack K. Jeanes and J.K.J. Corporation (Jeanes) against Cliff Henderson and

Cliff C. Henderson, Ltd., Inc. (Henderson) and Robert B. Stallworth, Jr. and Stallworth Oil and Gas, Inc. (Stallworth). Presently, Jeanes seeks: (1) a declaratory judgment that the three options to a 1971 Investment Contract are binding on Henderson; (2) a declaratory judgment that these options are covenants running with the land and thus, are binding on Stallworth; and (3) damages against Stallworth for tortious interference with the 1971 Investment Contract and a subsequent Jeanes-Henderson oral development agreement, and for malicious interference with a prospective Jeanes-Henderson business relationship.

In 1971, Henderson and his company, Marilon Minerals, Inc. (Marilon), were producing gas in Parker and Hood Counties on the "Lokey-Cartwright" oil and gas leases pursuant to a farm-out agreement. When the purchaser of their gas offered to pay a higher price for the gas in exchange for the drilling of five additional wells on the leases, Henderson and Marilon agreed to drill these wells. Henderson and Marilon solicited Jeanes to help finance this project and in December 1971, these parties entered into an investment contract. Under this 1971 Investment Contract, Jeanes paid Henderson and Marilon $45,000 in exchange for a ⅜ths working interest in both the wells and the 320 acres surrounding each well. This 1971 Investment Contract also included three options which are the center of the declaratory judgment portion of this lawsuit.[1]

Shortly thereafter, Henderson and Marilon drilled the wells, obtained production and assigned a ⅜ths working interest to Jeanes. In fact, these wells continue to produce today and Jeanes still receives the proceeds from his working interest. In July 1980, Henderson and Marilon conveyed and warranted 77½ percent of their working interest in the undeveloped portions of the Lokey-Cartwright leases to Stallworth. Jeanes responded in September 1981 by filing suit against Henderson and Marilon in the federal court for the Northern District of Texas contending that the sale to Stallworth interfered with his rights under the 1971 Investment Contract. Since no diversity of citizenship existed between the parties, Jeanes obtained federal question jurisdiction in the federal court by alleging that this sale violated section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (1981) and Rule 10b–5, 17 C.F.R. § 10b–5 (1981). In addition to the federal claim, Jeanes asserted five state-related claims arising out of the July 1980 transaction: (1) a violation of the Texas Securities Laws under Tex.Rev.Civ. Stat.Ann. article 581–33 (Vernon 1985); (2) common law fraud and statutory fraud under Tex.Bus & Comm.Code Ann. § 27.01 (Vernon 1968 and Vernon Supp.1985); (3) slander of title; (4) breach of fiduciary duty; and (5) breach of contract and warranty.

The district court, exercising pendent jurisdiction[2] over the state-related claims, ad-

---

1.  With respect to these options, the 1971 Investment Contract provided:

    Party of the First Part [Henderson and Marilon] will give Party of the Second Part [Jeanes] the "Option" to partake in any future Drilling and Exploration that said Party of the First Part might undertake in and around the Leases owned by Party of the First Part.... Party of the Second Part will also have the "Option" to purchase any existing Producing Leases, not presently owned by Party of the First Part, that said Party of the First Part might purchase.... Party of the First Part also agrees to give Party of the Second Part a 30 day Option to purchase all of his Interest should he ever decide to sell his Interest.

2.  The doctrine of pendent jurisdiction allows a federal court to adjudicate state-related claims along with a federal claim when:

    the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. [Citation omitted.] The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal and state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

judicated the entire action brought by Jeanes. That court directed verdicts against Jeanes on the alleged securities laws violations as well as the first four of Jeanes' state-related claims. Only the breach of contract and warranty claim survived the directed verdicts and that claim was decided against Jeanes based on jury findings. Accordingly, the federal district court rendered a take-nothing judgment against Jeanes and on appeal, the Fifth Circuit affirmed. *Jeanes v. Henderson*, 703 F.2d 855 (5th Cir.1983).

## THE DECLARATORY JUDGMENT ACTIONS

■ With respect to his requests for separate declaratory judgments against Henderson [3] and Stallworth, Jeanes argues that he is entitled to these judgments as a matter of law. Henderson and Stallworth both respond that res judicata bars and collateral estoppel precludes Jeanes from asserting these claims and litigating the accompanying issues. The effect of the prior federal court judgment on the present cause must be examined in terms of res judicata first, and then if necessary, collateral estoppel. While courts are prone to confuse these two doctrines and use them interchangeably, *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984), it is important to distinguish the two and consider them separately because a ruling that res judicata bars these claims will eliminate our need to analyze collateral estoppel. Res judicata, or claim preclusion, involves the dual principles of merger and bar. On the one hand, if a plaintiff prevails in a lawsuit, his cause of action merges into the judgment and the cause of action dissolves. *See Westinghouse Credit Corp. v. Kownslar*, 496 S.W.2d 531, 532 (Tex.1973); *Restatement (Second) of Judgments* § 18 (1982). On the other hand, if the defendant wins the original suit, the plaintiff is barred from bringing another action on claims actually litigated and also on claims

that could have been litigated in the original cause of action. *See Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex.1979); *Restatement (Second) of Judgments* §§ 19, 24(2) (1982). Thus, res judicata prevents a plaintiff from "splitting" his cause of action and subsequently asserting claims that could have been litigated in the first instance.

Henderson and Stallworth argue that since Jeanes could have pursued the declaratory judgment claims in the federal court, this lawsuit constitutes a "splitting" of his overall cause of action and should be barred. Jeanes counters that the current lawsuit involves a different cause of action than the federal court litigation, so res judicata does not apply. *See Griffin v. Holiday Inns of America*, 496 S.W.2d 535, 538 (Tex.1973). Jeanes also argues that it would have been useless to seek declaratory relief in the original suit because it is state-related and there is no way to be certain that the federal court would have exercised its discretion to take pendent jurisdiction over this matter. We agree with Henderson and Stallworth.

■ Even though the original lawsuit involved both federal and state-related claims, the fact that it took place in federal court requires us to follow the federal law of res judicata. *Commercial Box & Lumber Co. v. Uniroyal, Inc.*, 623 F.2d 371, 373 (5th Cir.1980); *Restatement (Second) of Judgments* § 87 (1982). When considering whether subsequent claims are based on the same cause of action as a prior lawsuit, the Fifth Circuit employs the "primary right" test. *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir.1979). Under this test, "if the primary right and duty and the delict or wrong are the same in each action, the cause of action is the same." *Hall v. Tower Land & Investment Co.*, 512 F.2d 481, 483 (5th Cir.1975). In these two suits, Jeanes first sought and now seeks to assert his rights under the

*United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (emphasis in original).

3. Marilon sold its share of the working interest to Henderson and is not involved in the present action.

1971 Investment Contract in response to the 1980 transaction between Henderson and Stallworth. As Jeanes admits in a reply brief before this court: "[a]t best all that can be said is that Jeanes previously sued upon the wrong theory. Instead of suing Henderson for breach and damages, he should have sued Stallworth for title." Thus, only Jeanes' theory of recovery has changed and that does not give rise to a new cause of action. *See Carr v. United States,* 507 F.2d 191, 193 (5th Cir.1975); *Reed v. Marketing Serv. Int'l Ltd.,* 540 F.Supp. 893, 898 (S.D.Tex.1982). Consequently, under the "primary right" test, it is clear that Jeanes' present suit for declaratory judgments involves the same cause of action as the federal court litigation.

Jeanes' argument that it would have been useless to seek declaratory relief during the original federal lawsuit concedes, and an examination of the record confirms, that he did not even attempt to assert these claims at that time. However, Jeanes could have amended his pleadings to include the declaratory relief he now seeks against Henderson and also he could have joined Stallworth and pleaded his current request for a declaratory judgment against him. The fact that Jeanes' declaratory judgment actions are based on Texas law presents this court with an unusual situation for considering res judicata. Here, we must ascertain the consequences of the subsequent assertion of omitted state-related claims from a federal court action. Section 25, comment (e) of the *Restatement (Second) of Judgments* (1982) instructs a state court to decide: (1) whether the federal court possessed jurisdiction over the omitted state claim, and if so, then (2) whether the federal court would clearly have declined the exercise of that jurisdic-

tion as a matter of discretion.[4] If the federal court would have had jurisdiction over the second action and would have exercised its discretion to entertain that action, then the *Restatement (Second)* dictates that the second action be barred.

Whether the federal court would have had jurisdiction to hear the declaratory judgment actions is contingent upon the federal claim being of sufficient substance to confer pendent subject matter jurisdiction on that court. *See United Mine Workers v. Gibbs* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Since the pertinent federal claim would be the same federal securities laws action that the federal court actually heard and adjudicated, the federal court clearly had jurisdiction to consider the present request for declaratory relief. The second step of the *Restatement (Second)* formula, whether the federal court would have declined to exercise this jurisdiction as a matter of discretion, is more difficult. For this reason, we will separately consider Jeanes' requests for declaratory judgments against Henderson and Stallworth.

■ With respect to Jeanes' action for declaratory relief against Henderson, we are certain that the federal court would have exercised its discretion to take pendent jurisdiction over this claim. As noted, that court actually adjudicated all the pendent state-related claims brought by Jeanes against Henderson. Thus, there is no reason that the federal court would clearly have declined to exercise its discretion to take pendent jurisdiction over and decide this claim. Consequently, we hold that res judicata bars Jeanes from pursuing his declaratory judgment action against Henderson.

---

4. *Restatement (Second) of Judgments* § 25, comment (e) (1982) provides:

A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not main-

tain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.

In regards to his action against Stallworth, Jeanes argues that he was under no procedural obligation to join Stallworth in the federal court litigation. Res judicata, however, can impose procedural obligations on litigants that do not otherwise exist under the rules of procedure. As mentioned, the federal court would have had jurisdiction over this matter by virtue of Jeanes' federal securities laws action against Henderson. Deciding whether the federal court would clearly have declined to exercise its discretion to take jurisdiction over this claim, however, raises different questions than Jeanes' claim against Henderson.

■ If Jeanes had joined Stallworth in the federal court action and asserted his current request for declaratory relief at that time, Stallworth's status would have been that of a pendent party. The doctrine of pendent party jurisdiction allows a federal court, in a non-diversity case, to adjudicate a state-related claim against a third party who is not otherwise involved in any federal claim. *See Florida East Coast Ry. Co. v. United States,* 519 F.2d 1184, 1193–96 (5th Cir.1975). While we recognize that a federal court is not always free to take jurisdiction over a state-related claim against a pendent party, *see Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the assertion of pendent party jurisdiction is most compelling where the federal court maintains exclusive jurisdiction over the underlying federal claim. *See Boudreaux v. Puckett,* 611 F.2d 1028, 1031 (5th Cir.1980); *Dick Meyers Towing Serv., Inc. v. United States,* 577 F.2d 1023, 1024 (5th Cir.1978). Since Jeanes' federal securities laws action was within the exclusive jurisdiction of the federal court, 15 U.S.C. § 78aa (1981), the assertion of his declaratory judgment claim against Stallworth would have presented the federal court with the classic situation for exerting pendent party jurisdiction.

Thus, the federal court would not clearly have declined to exercise its discretion to adjudicate Jeanes' declaratory judgment action against Stallworth.

Traditionally, only parties and their privies were entitled to the benefits of res judicata. *See, e.g., Cromwell v. County of Sac,* 4 OTTO 351, 352, 94 U.S. 351, 352, 24 L.Ed. 195 (1876). The elusiveness of the privity concept, however, has led the Fifth Circuit to abandon this requirement and instead analyze the relationship between the party involved in the initial litigation and the non-party to that action who seeks to take advantage of res judicata. *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir.1977). As a leading authority states, "[o]nce it is concluded that [res judicata] is asserted against a person who properly may be bound by the judgment, the inquiry shifts to ask whether there is some special reason for denying its benefits to a non-party." 18 C. Wright, A. Miller and E. Cooper, Federal Practice & Procedure § 4448 at 410 (1981).

■ In this cause, Henderson and Stallworth possess a concurrent working interest in the undeveloped portions of the Lokey-Cartwright leases, with Stallworth's interest warranted by Henderson. Because of the warranty, Stallworth is entitled to take advantage of the res judicata benefits that inure to Henderson from the prior judgment. *See Gilman v. Osborn,* 78 N.M. 498, 433 P.2d 83, 85 (1967); 46 Am.Jur.2d *Judgments* § 533 (1969); A. Freeman, Freeman on Judgments § 441 (5th ed. 1925). Furthermore, the res judicata policy considerations of promoting judicial economy, preventing vexatious litigation and avoiding inconsistent results, *see Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979), would be frustrated by allowing Jeanes to proceed against Stallworth.[5] Thus, after

---

5. In this part of the cause, Jeanes only seeks declaratory judgments. Thus, assuming the validity of Jeanes' arguments, no liability on the part of Henderson or Stallworth will accrue until a breach of the options takes place. If we

allow Jeanes to proceed against Stallworth and Jeanes prevails, due process would prevent Jeanes from asserting that judgment against Henderson. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313,

analyzing the Henderson-Stallworth relationship, we find no reason for denying the res judicata benefits of the prior federal court action to Stallworth. Consequently, we hold that Jeanes is barred from pursuing his declaratory judgment action against Stallworth.[6]

### THE INTERFERENCE CLAIMS

In this part of the cause, Jeanes seeks damages from Stallworth for tortious interference with the 1971 Investment Contract and a subsequent Jeanes-Henderson oral development agreement, and for malicious interference with a prospective Jeanes-Henderson business relationship. According to Jeanes, shortly after the execution of the 1971 Investment Contract, he and Henderson entered into an oral agreement to further develop the Lokey-Cartwright leases. Also, Jeanes contends that the potential for an additional business relationship existed between Henderson and himself with respect to this future development. Jeanes complains that Stallworth's on-going conduct concerning the Lokey-Cartwright leases interfered with these contracts and this prospective business relationship. The courts below, however, refused to consider these claims. The court of appeals reasoned that the res judicata effects of the federal court judgment barred Jeanes from asserting these claims.

As discussed previously, the scope of the federal court cause of action is determined by the "primary right" test. *See Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir.1979). By applying this test to Jeanes' claim that Stallworth tortiously interfered with the 1971 Investment Contract, we find that this claim is part of the original federal cause of action. Here, Jeanes' rights stem from the 1971 Investment Contract and the

wrong results from the 1980 transaction between Henderson and Stallworth. As with the declaratory judgment actions, we find no reason to deny the res judicata benefits of the federal court action to Stallworth. Consequently, we hold that Jeanes is barred from asserting his claim that Stallworth tortiously interfered with the 1971 Investment Contract. Jeanes' remaining interference claims, however, are different matters. These claims are separate and distinct from the federal cause of action because Jeanes' rights in these claims do not ensue from the 1971 Investment Contract. Since they constitute a different cause of action, the court of appeals erred in utilizing res judicata to bar these claims.

Stallworth also argues that collateral estoppel precludes Jeanes' from asserting the remaining interference claims because the federal court necessarily decided that Stallworth was legally justified in his actions. We disagree. Collateral estoppel, or issue preclusion, prevents a party from relitigating a fact issue in a subsequent lawsuit, when the fact issue already was fully and finally litigated and was essential to the judgment in a prior litigation. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 362 (Tex.1971); *Restatement (Second) of Judgments* § 27 (1982). The federal court litigation only construed the 1971 Investment Contract from the standpoint of Jeanes' six claims against Henderson. The remaining interference claims, however, concern a separate agreement between Jeanes and Henderson and a prospective business relationship distinct from the relationship created under the 1971 Investment Contract. Thus, the pertinent fact issues were not previously litigated and collateral estoppel has no application.

---

329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Consequently, upon a breach, Jeanes would still have to prove in a subsequent trial that the options are binding on Henderson. If that litigation were to be decided against Jeanes, the judgment in that case would conflict with the judgment against Stallworth.

**6.** We note that this ruling does not bar Jeanes from suing Henderson and Stallworth if and when a breach of an option occurs, because a breach action would not be a part of the original cause of action. In the event of an action for breach, the court that adjudicates that lawsuit can determine the collateral estoppel effects of the federal court litigation.

Finally, Stallworth maintains that the summary judgment evidence proves as a matter of law that he is free from liability on the remaining interference claims. Here, Stallworth bears the burden of demonstrating that the summary judgment evidence conclusively disproves at least one element of each of the remaining claims. *See Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 537 (Tex.1975). While Jeanes' summary judgment evidence raises fact issues on these claims, the summary judgment evidence tendered by Stallworth does not address them. Thus, the summary judgment evidence does not conclusively disprove any of the elements on the remaining interference claims.

In summary, we hold that res judicata bars Jeanes' actions for declaratory relief against Henderson and Stallworth and Jeanes' action against Stallworth for tortious interference with the 1971 Investment Contract. With respect to Jeanes' actions against Stallworth for tortious interference with the Jeanes-Henderson oral development agreement and for malicious interference with a prospective Jeanes-Henderson business relationship, we hold that res judicata and collateral estoppel do not apply and that fact issues exist on these claims. Accordingly, except for Jeanes' interference claims not affected by res judicata, we affirm the judgment of the court of appeals. Concerning the remaining interference claims, we reverse the judgment of the court of appeals and remand that part of the cause to the trial court for a trial on the merits.