Inez WEIMAN, Appellant,

v.

ADDICKS–FAIRBANKS ROAD SAND COMPANY d/b/a A–F Sand & Landfill, Richard H. Martini, and Richard A. Martini, Appellees.

No. B14–91–01280–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 23, 1992.

Rehearing Denied Feb. 4, 1993.

Steven E. Halpin, Houston, for appellant.

Jimmy Williamson, Houston, for appellees.

Before MURPHY, ROBERTSON and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal of a summary judgment. Inez Weiman ("Weiman") sued Addicks–Fairbanks Road Sand Company and its principal operating officers, Richard H. and Richard A. Martini, (collectively "Addicks–Fairbanks") for trespass, conversion, waste, and failure to close a landfill in connection with Addicks–Fairbanks' operation of a sandpit and landfill on her land. The trial court granted Addicks–Fairbanks' motion for summary judgment based on res judicata, collateral estoppel, and compulsory counterclaim affirmative defenses. Weiman appeals. We affirm in part and reverse in part.

For a number of years, the Weimans had leased a tract of land to Addicks–Fairbanks, the latest lease running from January 1, 1984, to January 1, 1989. Under the lease Addicks–Fairbanks was to operate a sandpit and landfill, pay the Weimans a twenty-percent royalty on gross receipts, and maintain the landfill in compliance with federal and state law. In January 1989 after the lease had expired, Addicks–Fairbanks wrote to Mrs. Weiman, now a widow, seeking a long-term commitment for use of the land. Addicks–Fairbanks informed Weiman that it would continue to comply with federal environmental laws and state health regulations, but would be unable to pay royalties because of an unfavorable business climate. Pending further negotiations the company continued to operate the sandpit and landfill and paid no further royalties.

In April 1990, Addicks–Fairbanks was still on the land, and Weiman filed suit for trespass, conversion, and waste (*"Weiman I"*). In May 1990, Weiman contracted with a third party to sell land adjoining the sandpit and landfill tract. The contract of sale called for excavation deed restrictions which Addicks–Fairbanks claimed would make it impossible to properly maintain or close the landfill. Addicks–Fairbanks Road and Sand Company (but not the Martinis) counterclaimed in *Weiman I* for a declaratory judgment seeking primarily a determination of its rights under the January 1984 lease, its right of ingress/egress, and the validity of the excavation deed restrictions as bearing on its right to operate the sandpit and landfill and its duty to maintain the landfill in compliance with federal and state law.

Weiman non-suited her claims of trespass, conversion, and waste, but Addicks–Fairbanks proceeded to a non-jury trial on its counterclaims. On December 17, 1990, the court issued a declaratory judgment. The court found that the January 1984 lease had expired and Addicks–Fairbanks was not a holdover tenant, declared the excavation deed restrictions valid, and granted Weiman a non-suit on her original claims. On December 28, 1990, Addicks–Fairbanks formally vacated the land, but did not close the landfill and has not performed post-closure maintenance.

On December 31, 1990, Weiman again sued Addicks–Fairbanks for trespass, conversion, and waste (*"Weiman II"*). Weiman later amended her pleading to add a cause of action for failure to close the landfill and to request injunctive relief to compel Addicks–Fairbanks to transfer its operating permit to Weiman. Addicks–Fairbanks moved for summary judgment on the affirmative defenses of res judicata, collateral estoppel, and the compulsory counterclaim rule, arguing that Weiman's claims in *Weiman II* were actually litigated or should have been litigated in *Weiman I*. The trial court granted the motion.

■ In point of error two, Weiman argues that Addicks–Fairbanks' motion for summary judgment must fail as to her claims against Addicks–Fairbanks for failure to close the landfill and refusal to transfer its operating permit because the motion does not specifically address these causes of action. In May 1991, Addicks–Fairbanks filed its motion for summary judgment. In early September 1991, Weiman amended her pleadings to add a cause of action concerning Addicks–Fairbanks' failure to close the landfill when it vacated the land. She also requested injunctive relief to compel Addicks–Fairbanks to transfer its operating permit to her. In late September 1991, the court granted the motion for summary judgment, dismissing all of Weiman's causes of action. Weiman complains that Addicks–Fairbanks did not amend or supplement its motion for summary judgment to address the added cause of action or her request for injunctive relief.

Weiman relies on *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563 (Tex.1983), which stands for the proposition that a court cannot grant a judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. *Id.* at 564; TEX.R.CIV.P. 166a(c); however, *Chessher* is distinguishable from the case at bar. In *Chessher* the plaintiff brought claims of breach of contract, wrongful discharge, fraud, and misrepresentation claims against defendant. Defendant moved for summary judgment based solely on a statute of frauds defense applicable only to the breach of contract claim. The motion failed to address plaintiff's tort claims. *Id.* Here, Addicks–Fairbanks relies on res judicata, collateral estoppel, and compulsory counterclaim defenses arguably applicable to all of Weiman's claims. *Cf. Weaver v. Stewart*, 825 S.W.2d 183, 185 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (reversing a summary judgment when the movant specifically stated that his motion was directed to only one of several causes of action and the motion and response dealt exclusively with that one issue).

While Addicks–Fairbanks' motion does not specifically address Weiman's added claims, the claims were before the court in the summary judgment proceeding because: (1) Weiman's amended pleading containing the added causes of action was attached to her response to the motion for summary judgment as an exhibit; (2) Addicks–Fairbanks' *Weiman I* counterclaim pleading, alleging that the excavation deed restrictions prevented proper landfill closure, was an exhibit to the summary judgment motion; and (3) deposition testimony of Weiman and her attorney from *Weiman I*, addressing Addicks–Fairbanks' responsibility to maintain and close the landfill or transfer the landfill permit to Weiman, was an exhibit to Addicks–Fairbanks' motion.

Therefore, the trial court had before it all of Weiman's causes of action; Addicks–Fairbanks' res judicata, collateral estoppel, and compulsory counterclaim defenses arguably applicable to all of Weiman's claims; and summary judgment proof bearing on the issue of Addicks–Fairbanks' failure to close the landfill. We overrule point two.

In point of error one, Weiman maintains that there are genuine issues of material fact precluding summary judgment. In our review, we apply the following criteria: (1) The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law; (2) In deciding if there are unresolved issues of material fact that preclude summary judgment, evidence favorable to the non-movant is taken as true; and (3) Every reasonable factual inference favorable to the non-movant is accepted and any doubts resolved in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Addicks–Fairbanks based its motion for summary judgment on the affirmative defenses of res judicata, collateral estoppel, and compulsory counterclaim. The judgment did not specify which type of claim or issue preclusion was the basis of the judgment. We will, therefore, uphold the judgment on any one of those theories that is supported by the summary judgment proof. *Wavell*

*v. Roberts*, 818 S.W.2d 462, 464 (Tex. App.—Corpus Christi 1991, writ denied).

 The res judicata principle of merger prevents a successful plaintiff in a prior suit from enforcing rights established by the prior judgment in a new suit rather than in an action brought on the judgment. In other words all claims related to the subject matter of the original cause of action are merged into the judgment and the cause of action is extinguished. *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex.1985). The res judicata principle of bar precludes an unsuccessful plaintiff from relitigating not only any matter that was actually offered and received to sustain or defeat a claim or demand, but also any other admissible matter which might have been offered for the purpose under the exercise of due diligence. *See Id.; see also* 2 ROY W. MC-DONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 7.43 (rev.1982). In essence res judicata, or claim preclusion, gives a plaintiff one bite at the cause of action apple. Collateral estoppel, or issue preclusion, precludes the relitigation of fact issues that were fully and finally litigated and essential to the judgment reached in a prior action. *Jeanes*, 688 S.W.2d at 106.

 To the res judicata/collateral estoppel scheme, we must overlay the compulsory counterclaim rule. TEX.R.CIV.P. 97(a). Six elements define a compulsory counterclaim. A claim for affirmative relief must (1) arise from the same transaction or occurrence as gave rise to the main cause of action, (2) be mature and owned by the counterclaimant, (3) be against an opposing party in the same capacity, (4) not require third parties who cannot be brought into the suit, (5) be within the court's jurisdiction, and (6) not be pending elsewhere. *Id.* If a claim is brought against a party, and that party shows that the claim was a compulsory counterclaim against him in a prior suit between the parties, the claim is precluded.

Res judicata, collateral estoppel, and compulsory counterclaim principles create several mechanisms whereby a Weiman claim in *Weiman II* would be precluded by the *Weiman I* action. First, the res judica-ta principle of merger would preclude Weiman from renewing as a *Weiman II* cause of action a claim that was essentially the same cause of action as in *Weiman I*. Merger is inapplicable here, since Weiman non-suited all of her causes of action in *Weiman I*. Second, the res judicata principle of bar would preclude an unsuccessful plaintiff in *Weiman I* from relitigating in *Weiman II* any claim or defense related to the subject matter of *Weiman I* that was or should have been litigated there with the exercise of due diligence. The declaratory judgment in *Weiman I* (1) found that the January 1984 lease had expired on its own terms and that Addicks–Fairbanks was not a holdover tenant, (2) declared that the excavation deed restrictions were valid, (3) denied Addicks–Fairbanks ingress/egress, and (4) declared that Addicks–Fairbanks take nothing. The subject matter of *Weiman I* was Addicks–Fairbanks' counterclaim, and Addicks–Fairbanks was the unsuccessful plaintiff, not Weiman. Addicks–Fairbanks lost its counterclaim and the bar principle would be applicable against it, not Weiman. Third, collateral estoppel would preclude in *Weiman II* a Weiman claim that depended on a fact issue that was fully and finally litigated in *Weiman I* and was essential to the judgment reached there. But the judgment in *Weiman I* was unfavorable to Addicks–Fairbanks, and it is impossible for Addicks–Fairbanks to show that there were fact issues adjudicated favorably to it that were essential to an unfavorable judgment.

By elimination, the compulsory counterclaim rule is the only means by which Addicks–Fairbanks could prevent Weiman from bringing her *Weiman II* claims. Compulsory counterclaims are appropriate in declaratory judgment actions when the Rule 97(a) requirements are met. *Greater Houston Bank v. Conte*, 666 S.W.2d 296, 299 (Tex.App.—Houston [14th Dist.] 1984, no writ); 1 MCDONALD, TEXAS CIVIL PRACTICE § 2.06 (rev.1991). Weiman's claims in *Weiman II* are precluded if they were compulsory counterclaims to Addicks–Fairbanks' counterclaims in *Weiman I*.

When a defendant moves for summary judgment on the basis of an affirmative defense, the defendant must present and prove conclusively all essential elements of its defense as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). Here, Addicks–Fairbanks must prove all the elements of the compulsory counterclaim rule. Tex.R.Civ.P. 97(a). Only three of the elements are contested on appeal, namely, that a compulsory counterclaim must (1) arise from the same transaction or occurrence as gave rise to the main cause of action, (2) be mature and owned by the counterclaimant, and (3) be against an opposing party in the same capacity. *See Id.*

First, Weiman argues that her *Weiman II* causes of action did not arise out of the same transaction or occurrence as did Addicks–Fairbanks' *Weiman I* counterclaims. We disagree. The Texas Supreme Court recently drew a parallel between the transactional approach embodied in the compulsory counterclaim rule and the approach to be used when applying basic res judicata principles:

> A "transaction" ... determination is to be made pragmatically, 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.'

*Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 631 (Tex.1992), quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982).

Weiman would have us apply the "elements of proof" test used in *Astro Sign Co. v. Sullivan,* 518 S.W.2d 420 (Tex.App.—Corpus Christi 1974, writ ref'd n.r.e.), but *Barr* disapproved of this approach saying:

> Every theory of recovery has its unique elements of proof. [O]nly slight variations of the facts to support different theories of the same incident can result in a court finding different causes of

action, thus thwarting the purposes of res judicata.

*Barr,* 837 S.W.2d at 630.

Addicks–Fairbanks offered the following summary judgment proof: (1) Weiman's original *Weiman II* pleading (Weiman's response included her latest *Weiman II* amended pleading), (2) Weiman's live *Weiman I* pleading, (3) Addicks–Fairbanks' penultimate *Weiman I* counterclaim pleading (Weiman's response included the latest Addicks–Fairbanks amended counterclaim pleading), (4) the *Weiman I* judgment, (5) *Weiman I* deposition testimony by Weiman and her attorney, and (6) affidavits by the Martinis and their current and former attorneys.

We find that the summary judgment proof shows that the same factual circumstances gave rise to both Addicks–Fairbanks' *Weiman I* counterclaims and Weiman's *Weiman II* claims. These undisputed core facts consist of Addicks–Fairbanks' continued occupation of Weiman's land after the lease had expired, continued operation of the sandpit and landfill, and failure to pay royalties to Weiman. These core facts gave rise to Addicks–Fairbanks' *Weiman I* counterclaim for a declaration of (1) its rights pursuant to the lease, (2) its rights and liabilities regarding the tract of land leased from Weiman and excavation deed restrictions depriving it of use of the land, and (3) its rights of ingress/egress to the land. These same facts also gave rise to Weiman's *Weiman II* claims for (1) trespass by Addicks–Fairbanks in remaining on the sandpit/landfill tract after expiration of the lease, (2) conversion of the gross receipts from the landfill and sandpit operation, (3) trespass, conversion and waste involving adjoining land, and (4) failure to close the landfill and her request for injunctive relief. Here, the pragmatic *Barr* standard is readily met. The combination of these competing claims would have formed a convenient trial unit in *Weiman I.* This combination would have been consistent with the parties achieving a comprehensive conclusion to their business relationship and resolving all lingering issues connected with the expired lease.

Second, Weiman argues that her *Weiman II* claims were not mature at the time of *Weiman I*. We disagree in regard to the claims for trespass, conversion, and waste, but agree as to her claim for failure to close the landfill and request for injunctive relief. At the time of the *Weiman I* trial, Addicks–Fairbanks had been on Weiman's land for almost two years after the expiration of the January 1984 lease, had been operating the sandpit and landfill, and had not paid her any royalties. Weiman's non-suited claims in *Weiman I*, which were almost identical to her *Weiman II* claims, indicate that she was aware of the existence of the acts and circumstances constituting trespass, conversion, and waste causes of action against Addicks–Fairbanks. This awareness is further indicated by the *Weiman I* deposition testimony by Weiman and her attorney.

■ Weiman's complaint against Addicks–Fairbanks for failure to close the landfill and refusal to transfer its operating permit to Weiman is another matter. Weiman argues that these causes of action were not mature at the time of *Weiman I* because Addicks–Fairbanks had not yet unequivocally vacated the land. We agree. Under a term in the lease, Addicks–Fairbanks owed a duty to Weiman to obtain an operating permit for the landfill and abide by federal environmental and state health laws. State law requires an operator abandoning a landfill to close it and perform post-closure maintenance for at lease five years. TEX.ADMIN.CODE §§ 325.152 & 325.-153. Addicks–Fairbanks did not provide Weiman with notice of its intent not to close or maintain the landfill until *after* the *Weiman I* declaratory judgment.

*Weiman I* declared that the January 1984 lease had expired, not that it was void. Addicks–Fairbanks' responsibilities under the lease for closure and post-closure maintenance of the landfill were not extinguished. Aspects of the *Weiman I* judgment regarding excavation deed restrictions and access to the land, while affecting Addicks–Fairbanks' ability to perform the closure and maintenance through its own operations, do not necessarily relieve Addicks–Fairbanks of liability for the accomplishment of those functions.

We find that Weiman's claims for Addicks–Fairbanks' failure to close the landfill and refusal to transfer its operating permit to Weiman were not mature at the time of *Weiman I* and are not barred by the compulsory counterclaim rule from being brought in *Weiman II*.

Third, Weiman argues that her *Weiman II* claims should not be barred, at least as to the Martinis, because the counterclaim in *Weiman I* was brought only by Addicks–Fairbanks Road Sand Company and not by the Martinis. She correctly maintains that the compulsory counterclaim rule requires an identity between the parties of the first and second suits. However, the *Weiman I* judgment included the Martinis as counterclaimants, and Weiman approved the judgment as to form and took no appeal.

The three compulsory counterclaim elements challenged on appeal involve law questions, i.e., the determination (1) whether Weiman's *Weiman II* claims arose from the same transaction or occurrence as the Addicks–Fairbanks' *Weiman I* counterclaims, (2) whether Weiman's *Weiman II* claims were mature at the time of *Weiman I,* and (3) whether the parties in *Weiman I* and *Weiman II* were identical. With the exception of trial court's maturity determination regarding Weiman's claims relating to the failure to close the landfill, we find that these law questions were correctly decided by the trial court based on the summary judgment evidence at hand.

More generally, Weiman argues that her *Weiman II* claims lie in tort and cannot be counterclaims to the Addicks–Fairbanks' *Weiman I* counterclaims which, she maintains, lie in contract. However, she bases her position on a misinterpretation of TEX. R.CIV.P. 97(g). The rule states that tort may not be the subject of setoff or counterclaim against a contractual demand, nor a contractual demand against tort, unless it arises out of, is incident to, or is connected with the opposing claim. TEX.R.CIV.P. 97(g). She maintains that the effect of Rule 97(g) is that a tort claim that does arise out of the opposing claim would be

permissive. We disagree. "Rule 97(g) has application only to permissive counterclaims, since compulsory counterclaims by definition must arise from the transaction or occurrence which is the subject matter of the plaintiff's claim." *See, e.g., Texas Nat'l Bank of Victoria v. Lewis,* 793 S.W.2d 83 (Tex.App.—Corpus Christi 1990, no writ); 2 McDONALD, TEXAS CIVIL PRACTICE § 7.50 (rev.1982).

■ Weiman further contends that her *Weiman II* claims for trespass, conversion, and waste should not be precluded because she was granted a non-suit without prejudice in *Weiman I.* However, the granting of a non-suit without prejudice before a plaintiff rests his case is a purely ministerial act, the non-suit being effective when the plaintiff files his motion for dismissal. *Shadowbrook Apartments v. Abu–Ahmad,* 783 S.W.2d 210, 211 (Tex.1990). A party is not barred from litigating claims in a subsequent suit merely because he voluntarily withdrew those claims from an earlier suit, unless the withdrawal was with prejudice. However, such claims are still subject to the rules of procedure. Here, the compulsory counterclaim rule bars these *Weiman II* claims. *See* TEX.R.CIV.P. 97(a).

Weiman asserts that her rebuttal proof raises material issues of fact. Weiman's response to the motion for summary judgment included as summary judgment proof (1) Weiman's live *Weiman I* pleading, (2) Addicks–Fairbanks live *Weiman I* counterclaim, (3) the *Weiman I* final judgment, and (4) Weiman's *Weiman II* live pleading. Two affidavits were also included. In an affidavit by Weiman's attorney, he states that he inspected the land on December 24, 1991, and that Addicks–Fairbanks had removed all of its heavy equipment. In the one other affidavit, an expert on solid waste management law stated that Addicks–Fairbanks had a duty under state law to close the landfill and that Addicks–Fairbanks had not done so.

We find that none of this rebuttal proof raises a genuine issue of material fact that would deny Addicks–Fairbanks its summary judgment on Weiman's claims for trespass, conversion, and waste. Two of the pleadings provided by Weiman in her response were more current versions than those included in Addicks–Fairbanks' motion; however, the parties do not contest which pleadings were live. We have already held that the compulsory counterclaim rule does not apply to Weiman's claims related to closure of the landfill.

In sum, we find that there were no genuine issues of material fact and that Addicks–Fairbanks established its affirmative defense of compulsory counterclaim as a matter of law against Weiman's claims of trespass, conversion, and waste. However, the trial court erred in denying Weiman a trial on the merits on her claim against Addicks–Fairbanks for failure to close the landfill and refusal to transfer its operating permit to her. We sustain point one in part.

We affirm the judgment below granting Addicks–Fairbanks' summary judgment on Weiman's claims for trespass, conversion, and waste. We reverse the judgment as to Weiman's claims against Addicks–Fairbanks for failure to close the landfill and refusal to transfer its operating permit. The latter causes are remanded for further action consistent with this opinion.