Opinion issued
April 7, 2011



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-09-00758-CV

———————————

TOMMY DACE, INDEPENDENT EXECUTOR OF THE ESTATE OF MARVIN DACE, SR.,
DECEASED, Appellant

V.

MARVIN HARRY DACE,
JR., Appellee



 



 

On Appeal from the County Court at Law No. 1
& Probate Court

Brazoria County, Texas

Trial Court Case No. 26,222



 



 

MEMORANDUM  OPINION

          This
appeal arises from an ongoing dispute between two brothers, Marvin Harry Dace,
Jr., (“Harry”) and Tommy Dace (“Tommy”), over the estate of their deceased
father, Marvin Harry Dace, Sr. (“Marvin”).  On July 31, 2008, this Court issued its
opinion in an earlier appeal involving the brothers and also arising from the
dispute over their father’s estate.[1]  

The current appeal arises
from a second action brought by Tommy as independent executor of Marvin’s
estate against Harry.  In the second
action, Harry filed a motion for summary judgment based on the affirmative
defenses of res judicata and collateral estoppel.  The trial court granted Harry’s motion.  Here, Tommy, as appellant, raises two issues
challenging the trial court’s order granting summary judgment in Harry’s favor.

We affirm.

Background[2]

          Following
the deaths of Ernestine and Marvin Dace, Tommy, as independent executor of
Marvin’s estate, pursued a lawsuit against Harry that had originally been filed
by Marvin and Ernestine against their son, Harry.  See Dace
v. Dace, No. 01–05–00832–CV, 2008 WL 2930092, at *1–2 (Tex. App.—Houston
[1st Dist.] July 31, 2008, pet. denied) (mem. op.).  Initially, Tommy alleged, as his parents had
earlier claimed, that Harry had orally agreed to pay his parents 50 per cent of
the net proceeds earned from the family business, Dace Manufacturing, a
business started by Marvin and which, by the time of the suit, Harry was
operating.  See id. at *1.  

Tommy alleged that Harry had
agreed to pay the proceeds in exchange for renting the equipment and the property
used to run the business.  See id. 
In other words, Tommy alleged that Harry had a lease agreement with
Marvin and Ernestine with regard to operating the business.  See id.  Tommy also pursued a challenge originally
brought by his parents to the validity of a deed transferring his parents’
homestead to Harry.  See id.  Tommy, as
independent executor, also challenged the validity of Marvin’s last will and
testament.  

When the case went to trial,
Tommy requested a trial amendment with regard to his breach-of-contract claim.  See id.
at *2.  Specifically, Tommy changed
his claim to assert that Harry had breached a written contract, rather than an
oral one as pled, with Ernestine and Marvin, and that the contract had been for
the purchase, rather than lease, of the business.  See id.
 

At the conclusion of trial,
the jury found the following: (1) Ernestine and Marvin had entered into a
written agreement with Harry for the sale of the family business, Dace
Manufacturing; (2) Harry intended to bind himself to an agreement with
Ernestine and Marvin that included the following term: “The parties agreed to a
50/50 split of the net profits from the business to be paid on a yearly basis,
with 50% net profit to Marvin H. Dace, Sr. and Ernestine Dace;” (3) Harry
breached that agreement; and (4) Harry’s breach resulted in $246,058.50 in
damages.  See id.  Tommy also prevailed
with regard to his challenges to the validity of Marvin’s last will and testament
and with regard to the validity of the deed transferring his parents’ homestead
to Harry. 

          On
July 7, 2005, the trial signed a judgment on the jury’s findings.  See
id.  With regard to Tommy’s breach of
contract claim, the trial court ordered as follows: “Tommy Dace, Independent
Executor of the Estate of Marvin H. Dace, Sr., Deceased, shall have and recover
from Marvin Harry Dace, Jr., the sum of Two Hundred Forty Eight Thousand Fifty
Eight and 50/100’s Dollars ($248,058.50) as damages herein, together with
prejudgment interest of $55,008.65.”  See id. 
The trial court also awarded attorney’s fees to Tommy in the amount of
$34,000.00.

          Harry
filed an appeal in which he challenged, inter
alia, the legal sufficiency of the evidence to support the jury’s findings
that he had entered into a written contract with his parents for the sale of
the business and that, as part of the agreement, Harry agreed “to a 50/50 split
of the net profits from the business to be paid on a yearly basis” to his
parents.  See id.  

In our July 31, 2008 opinion,
we agreed with Harry.  We analyzed the
evidence as follows:

No written contract between Harry and his parents was
offered at trial. Instead, to establish the existence of a written contract,
Tommy testified that, in 1993, Marvin showed him a handwritten contract drafted
by Marvin and signed by Harry.  Tommy
testified that, under the terms of the written contract, Harry agreed to pay
his parents 50 percent of the business’s net profits.  Tommy also testified that the written
agreement was a lease agreement between Harry and his parents.  Tommy did not testify that he saw a written
agreement regarding the sale of the business to Harry.  While some evidence was presented at trial
indicating that Harry had purchased the business from his parents, rather than
leasing it, no evidence was presented that Harry had entered into a written contract with his parents for
the purchase of the business.  To the contrary, Tommy testified that the
written contract he saw was a rental agreement between Harry and his parents.

 

Id.
at *3.

          We
concluded that legally insufficient evidence supported the jury’s finding that
Harry had entered into a written agreement with his parents to purchase Dace
Manufacturing.  See id.  We held that Tommy,
as independent executor of Marvin’s estate, should take nothing by his breach-of-contract
claim against Harry.  See id. 
We reversed the portions of the judgment awarding $248,058.50 in
damages, $55,008.65 in prejudgment interest, and $34,000 in attorney’s fees
against Harry and rendered judgment that Tommy, as independent executor of
Marvin’s estate, take nothing by the breach-of-contract claim.  See id.
at *8.  After overruling the other
dispositive issues raised by Harry, we affirmed the remaining portions of the
trial court’s judgment.  See id.

          Harry
filed a petition for review with the Texas Supreme Court, which the court denied
on January 9, 2009.  We issued our
mandate on April 14, 2009.

          In
his capacity as independent executor of Marvin’s estate, Tommy filed a “Motion
for Accounting,” which was in essence a new suit against Harry.[3]  Tommy alleged that, since Marvin’s death in
2002, Harry “has been in possession of certain property belonging to the estate
under a lease agreement between [Harry] and [Marvin].”  Tommy further asserts, “The property leased
is the business, equipment, and inventory of Dace Manufacturing.  The agreed-upon lease amount was to be the
sum of 1/2 of the net profit of the business to the lessee, [Harry], and 1/2 to
the Decedent, Marvin Harry Dace, Sr.”  

          Tommy
averred that, “[p]rior to the death of [Marvin], there was a default in the
lease payments . . . .”  Tommy asserted
that the balance due for the period preceding Marvin’s death is
$636,696.86.  He further alleged that
“since the date of [Marvin’s] death[,] it is the belief of [Tommy] that an
additional amount is owed to the Estate up to and including December 31,
2008.”  Tommy estimated that the amount
owed for the period after Marvin’s death under the lease agreement was $654,047.60.  Tommy asserted that the “grand total” owed by
Harry for both time periods under the lease was $1,290,744.46.            

Tommy requested “an
accounting of all money received by Dace Manufacturing from the year 2004 until
2008.”  Tommy also requested that Harry
be required to pay the sums owed under the agreement.  Tommy further laid claim to monies Harry had
paid into the registry of the court relating to the earlier July 7, 2005
judgment and which remained in the registry of the trial court.

          Harry
filed a motion for summary judgment based on the affirmative defenses of res
judicata and collateral estoppel.  With
respect to res judicata, Harry asserted the following in support of his request
for summary judgment: “Tommy’s second action . . . is not just what
could have been litigated in the first action. 
It is exactly what was pled, litigated, merged in the judgment in the
first action and involves the same parties.”

As summary judgment
evidence, Harry offered (1) Tommy’s earlier petitions, in which Tommy had
asserted that Harry had breached a lease agreement with their parents, (2) the
jury charge and verdict in the first action, the trial court’s July 7, 2005
judgment, (3) this Court’s July 31, 2008 memorandum opinion, and (4) our
mandate.  Harry also requested that the trial
court release the funds that he had previously deposited into the court’s registry.  

          In
his response to the motion for summary judgment, Tommy asserted, “Res judicata
cannot bar litigation of a claim in Suit 2 that arose after Suit 1.”  He contended, “Tommy’s claims for accounting
for the years 2005–2009 could not—obviously—have been raised in the trial in Suit 1
which ended in . . . mid–2005.”  Tommy
further asserted that the claims in each action were not “identical” because Tommy’s
“current claims for an accounting involve the lease years 2005, 2006, 2007,
2008, and 2009, they are identical—and could not be identical—with issues raised in Suit 1, which
ended in a unanimous Jury Verdict and Judgment in Tommy’s favor in mid–2005.”  

          The
trial court granted Harry’s motion for summary judgment without identifying the
basis for its ruling.  The court also
ruled that the money in the registry of the court should be returned to
Harry.          Tommy
now appeals the trial court’s summary judgment. 


Summary Judgment 

Tommy contends in two issues
that the trial court erred when it granted Harry’s motion for summary
judgment.  

 

A.      Legal Principles: Traditional Summary
Judgment 

We review a trial court’s
summary judgment de novo.  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003).  A party moving for “traditional”
summary judgment must prove (1) there is no genuine issue as to any material
fact and (2) it is entitled to judgment as a matter of law.  See Tex. R. Civ. P. 166a(c); Little v. Texas Dep’t of Criminal Justice,
148 S.W.3d 374, 381 (Tex. 2004).  In our
review, we take the nonmovant’s competent evidence as true, indulge every
reasonable inference in favor of the nonmovant, and resolve all doubts in favor
of the nonmovant.  Yancy v. United Surgical Partners Int’l, Inc., 236 S.W.3d 778, 782
(Tex. 2007).  

A defendant seeking summary
judgment based on an affirmative defense must establish all elements of the
affirmative defense as a matter of law.  Roark v. Stallworth Oil & Gas, Inc.,
813 S.W.2d 492, 495 (Tex. 1991).  Res
judicata is an affirmative defense.  See Tex.
R. Civ. P. 94.  If the movant conclusively
establishes that the action is barred by res judicata, the non-movant must then
adduce summary-judgment proof raising a fact issue in avoidance of that affirmative
defense.  See Motient Corp. v. Dondero, 269 S.W.3d 78, 82 (Tex. App.—Dallas
2008, no pet.); see also KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  When, as here, the trial court’s order
granting summary judgment does not specify the grounds on which it was granted,
we will affirm the judgment if any of the theories advanced are meritorious.  See
Knott, 128 S.W.3d at 216.

B.      Tommy’s Claim is Barred by Res Judicata

          Legal
Principles of Res Judicata

          Essentially,
the doctrine of res judicata gives a plaintiff one bite at the cause-of-action
apple.  Weiman v. Addicks-Fairbanks Road Sand Co., 846 S.W.2d 414, 418
(Tex. App.—Houston
[14th Dist.] 1992, writ denied).  The
doctrine of res judicata prevents the relitigation of a claim or cause of
action that has been finally adjudicated, as well as related matters that, with
the use of diligence, should have been litigated in the prior suit.  Kizer v.
Meyer, Lytton, Alen & Whitaker, Inc., 228 S.W.3d 384, 391 (Tex. App.—Dallas 2007, no pet.).  The doctrine effectively
requires that all theories of liability be brought in one suit.  Id.
 The policies behind the doctrine reflect
the need to bring all litigation to an end, prevent vexatious litigation,
maintain stability of court decisions, promote judicial economy, and prevent
double recovery.  Id.

To be entitled to summary
judgment on the affirmative defense of res judicata, the movant must establish
(1) a prior final judgment on the merits by a court of competent jurisdiction;
(2) the same parties or those in privity with them; and (3) a second action
based on the same claims as were raised or could have been raised in the first
action.  Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010); Amstadt v. U.S. Brass Corp., 919 S.W.2d
644, 652 (Tex. 1996).  “The judgment in
the first suit precludes a second action by the parties and their privies on
matters actually litigated and on causes of action or defenses arising out of
the same subject matter that might have been litigated in the first suit.”  Joachim,
315 S.W.3d at 862 (quoting Gracia v. RC
Cola-7-Up Bottling Co., 667 S.W.2d 517, 519 (Tex. 1984)).  In short, the doctrine of res judicata bars
the relitigation of claims that have been finally adjudicated or that could
have been litigated in the prior action.  See Igal
v. Brightstar Info. Tech. Group, Inc., 250 S.W.3d 78, 86 (Tex. 2008).

When there is a legal
relationship, such as under a lease, a contract, or a marriage, all claims
arising from that relationship will arise from the same subject matter and be
subject to res judicata.  See Pinebrook Props., Ltd. v. Brookhaven
Lake Prop. Owners Ass’n, 77 S.W.3d 487, 497 (Tex. App.—Texarkana 2002, pet. denied).  Claims in a business relationship should be
combined when they involve common core facts. 
Id.  When the same facts are involved, two trials
should be avoided by combining all of the matter existing between the parties
into one suit.  See Twyman v. Twyman, 855 S.W.2d 619, 625 (Tex. 1993).  

          Analysis 

The summary judgment
evidence presented by Harry conclusively established each of the elements of
the affirmative defense of res judicata.  The third amended petition filed in the first
action by Tommy is contained in the summary judgment record and conclusively
establishes that the parties in the two actions are identical: Tommy, as
independent executor of Marvin’s estate, and Harry.  See Parsons
v. Turley, No. 02-09-00381-CV, 2010 WL 5187704, at *2 (Tex. App.—Fort Worth
Dec. 23, 2010, no pet.) (mem. op.).

The judgment signed by the
trial court on July 7, 2005 and our opinion and mandate from the earlier action
are contained in the summary judgment record. Thus, the fact that a final
judgment on the merits was rendered by a court of competent jurisdiction in the
prior action is conclusively established. 
See id.

Finally, a comparison of Tommy’s
current pleading with his third amended petition in the first action shows that
Tommy seeks to recover damages based on the same operative core facts involved
in the first action.  In his third
amended petition, Tommy sued Harry for “an accounting and damages” asserting
that Harry had entered into a lease agreement with his parents in which Harry
had “agreed to pay [his parents] 50% of the net proceeds from the operation of
the business as rental for the property and business.”  The record shows that Tommy ultimately
abandoned this claim at trial and instead asserted that Harry had an agreement
with his parents to purchase Dace Manufacturing.  Tommy continued to assert that Harry had
agreed to “a 50/50 split of the net profits from the business to be paid on a
yearly basis, with 50% of the net profits to Harry Dace and 50% net profit to
Marvin H. Dace and Ernestine Dace,” as shown in the jury charge from the first
action. 

The record shows that Tommy
is now asserting the same claim that he pled and then abandoned in the first
action.  Specifically, Tommy is seeking
to litigate the issue of whether Harry had a lease agreement with his parents and
had agreed to pay his parents 50 percent of the business’s net profits.  Tommy could have litigated this claim in the
first action.  Indeed, Tommy testified at
trial that his parents had a lease agreement with Harry.  Nonetheless, at trial, Tommy chose to abandon
this theory of recovery.  Tommy instead pursued
a breach of contract claim against Harry on the theory that Harry had agreed to
a 50/50 split of the net profits based on an agreement to purchase the business
rather than an agreement to lease it.  Tommy
chose to pursue his breach of contract claim to final judgment in the first
action based on the alternate agreement-to-purchase theory.  This theory arises from the same operative,
core facts as his current claim.  Thus, Harry
has conclusively shown the judgment in the first action precludes the second
action.  Tommy’s claim in the second
action arises out of the same subject matter as the claim actually litigated in
the first action and could have been litigated in the first suit.  See Barr
v. Resolution Trust Corp., 837 S.W.2d 627, 630 (Tex. 1992).

We reject Tommy’s assertion
that his current claim for an accounting under the lease agreement for the
years 2005 through 2008 could not have been litigated in the first action.  Tommy contends that his claim for an
accounting arose in the second action only after judgment was rendered in the
first action.  He asserts that his claim
for an accounting under the lease agreement for the years 2005 through 2008 was
not “mature” when the judgment was rendered in the first action.  Tommy also asserts, “Suit 1 revolved around
an alleged ‘contract for sale of the business to Harry’ and ended in Judgment
signed 7/7/05, whereas Suit 2 revolve[s] around a request for an ‘accounting’
for Lease years that arose after the
7/7/05 judgment (i.e., 2005 through 12/31/08).” 


Tommy points to the legal
precept that a judgment in one suit will not operate as res judicata to a
subsequent suit on the same question between the same parties when, in the
interval, the facts have changed, or new facts have occurred which may alter
the legal rights or relations of the parties.  See Marino
v. State Farm Fire & Cas. Ins. Co., 787 S.W.2d 948, 949–50 (Tex. 1990).  However, a claim that a plaintiff has incurred
additional damages arising from the same operative facts underlying the first
action because of the passage of time is not the same as asserting a claim based
on new facts occurring after final judgment was rendered in the first action.  There has been no allegation that facts
underlying Tommy’s present claim are based on facts that have changed or arisen
since the rendition of final judgment in the first action.  To the contrary, the accounting claim in this
case, for the years 2005–2008, arises from the same core facts and issues underlying
the breach-of-contract claim in the first action, namely, the issue of whether
Marvin and Ernestine had an agreement with Harry to split the net profits of
Dace Manufacturing.  

Moreover, Tommy’s assertion
that res judicata does not apply because he is seeking an accounting in the
second action rather than seeking damages as he did in the first action is
without merit.  Again, the question is
not whether the same remedy is sought; it is whether the claim being asserted arises
out of the same subject matter and could have been litigated in the first action.  See Joachim,
315 S.W.3d at 862.  As discussed, here, the
answer to that question is yes. 

Tommy also asserts that this
Court, in its July 31, 2008 opinion, “determined” that Harry had a lease
agreement with his parents.  In support
of this assertion, Tommy points to the sufficiency-of-the evidence analysis in
our opinion in which we stated that Tommy testified that he saw a lease
agreement between Harry and his parents. 
See Dace, 2008 WL 2930092, at
*3.  Contrary to Tommy’s assertion, we
made no “determination” that Harry had a lease agreement with his parents.  In the portion of our opinion cited by Tommy,
we were discussing the evidence submitted at trial as part of our determination
that Tommy had offered legally insufficient evidence to support the jury’s breach-of-contract
finding.  See id.  As the Texas Supreme
Court has explained, a court of appeals cannot make original findings of fact;
it can only “unfind” facts.  Tex. Nat’l Bank v. Karnes, 717 S.W.2d
901, 903 (Tex. 1986).

Lastly, we address Tommy’s
contention that Harry did not meet his summary-judgment burden to conclusively
establish that res judicata precludes Tommy’s second action because Harry
failed to establish that he owns the family business, Dace Manufacturing.  Aside from the bare assertion, Tommy does not
show why Harry had to show that he owned the business to establish the elements
of res judicata.  

We conclude that Harry’s summary
judgment evidence presented to the trial court conclusively established every
element of the affirmative defense of res judicata.  After Harry met his summary-judgment burden, Tommy,
as non-movant, failed to meet his burden to adduce summary-judgment evidence
raising a fact issue in avoidance of res judicata.  We hold that the trial court did not err
by granting summary judgment for Harry based on res judicata. [4]

We overrule Tommy’s two
issues.




 

Conclusion

We affirm the judgment of
the trial court.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices
Jennings, Higley, and Brown.

 











[1]           See Dace. v. Dace, No. 01–05–00832–CV, 2008 WL 2930092 (Tex. App.—Houston [1st Dist.]
July 31, 2008, pet. denied) (mem. op.).  

 





[2]           For purposes of developing the background, we take
judicial notice of our memorandum opinion in
Dace v. Dace, No. 01–05–00832–CV, 2008 WL 2930092 (Tex. App.—Houston [1st
Dist.] July 31, 2008, pet. denied) (mem. op.). 
The memorandum opinion is also contained in the record of this
appeal.  In addition, a more detailed
discussion of the background facts underlying the dispute can be found in that
opinion. 





[3]        We recognize that there can be but one judgment in a
cause, but we regard the assignment of the number of a completed cause to a new
dispute as an administrative error insignificant to the disposition of the
merits.  Burns v. Bishop, 48 S.W.3d 459, 461 n.1 (Tex. App.—Houston [14th Dist.] 2001,
no pet.).  Moreover, as discussed infra, this dispute involves a claim to
monies held in the registry of the trial court. 
A court retains jurisdiction to disburse money held in its registry.  See Kenseth
v. Dallas County, 126 S.W.3d 584, 598 Tex. App.—Dallas 2004, pet. denied); see also In re Phillips, 296 S.W.3d 682,
685 (Tex. App.—El Paso, 2009 orig. proceeding).  Similarly, post-judgment orders embodying
awards to claimants or enforcing the court’s judgment itself are appealable
orders; they function like judgments. Kenseth,
126 S.W.3d at 600.

 





[4]           We need not determine whether Harry
was entitled to summary judgment based on the defense of collateral estoppel.