**PIGGLY WIGGLY CLARKSVILLE, INC., et al., Plaintiffs,**

v.

**INTERSTATE BRANDS CORPORATION, Defendant.**

No. 3:96–CV–051.

United States District Court, E.D. Texas, Paris Division.

Feb. 10, 2000.

John (Jack) Brown Baldwin, Baldwin & Baldwin, Marshall, TX, David J Manogue, Specter Law Offices, Pittsburgh, PA, Steven Alan Kanner, Much Shelist Freed Denenberg, Ament Bell & Rubenstein, Chicago, IL, Isaac L Diel, Todd R Seelman, Attorney at Law, Victoria, TX, Thomas H Brill, Law Offices of Thomas H Brill, Leawood, KS, Vernon N Reaser, Jr, Attorney at Law, Victoria, TX, for Piggly Wiggly Clarksville Inc, plaintiff.

Francis Scott Baldwin, Sr, John (Jack) Brown Baldwin, Baldwin & Baldwin, Marshall, TX, David E Sharp, Greenberg Peden Siegmyer & Oshman, Houston, TX, Joseph B Cox, Jr, Cox and Cox, Raleigh, NC, Isaac L Diel, Todd R Seelman, Attorney at Law, Victoria, TX, Thomas H Brill, Law Offices of Thomas H Brill, Leawood, KS, Vernon N Reaser, Jr, Attorney at Law, Victoria, TX, for Abraham's Food Town Inc, Staggers Oil Co. of Texas, Staggers Oil Co. of Louisiana, plaintiffs.

John (Jack) Brown Baldwin, Michael A Havard, Provost & Umphrey, Beaumont, TX, Paul E Slater, Sperling Slater & Spitz, Chicago, IL, Isaac L Diel, Todd R Seelman, Attorney at Law, Victoria, TX, Thomas H Brill, Law Offices of Thomas H Brill, Leawood, KS, Vernon N Reaser, Jr, Attorney at Law, Victoria, TX, for E E Kaine, Dandy Dodle, Inc., plaintiffs.

Jerry Lynn Beane, Strasburger & Price, Dallas, TX, for Interstate Brands Corporation.

*MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

SCHELL, Chief Judge.

This matter is before the court on "Defendant Interstate Brands Corporation's Motion for Summary Judgment" (Dkt.# 78), filed on September 22, 1998. On November 10, 1998, a sealed response in opposition to the motion was filed by Piggly Wiggly Clarksville, Inc., Abraham's Food Town, Inc., Staggers Oil Company of Louisiana, and Dandy Doodle, Inc., d/b/a Howdy Doody Food Store (collectively "Piggly Wiggly"). On December 2, 1998, Interstate filed a reply to Piggly Wiggly's response. By this motion, Interstate argues that Piggly Wiggly's claim that Interstate engaged in a conspiracy to fix the prices of bread and cake products is barred by the doctrines of res judicata and collateral estoppel because that claim and/or the factual issues underlying it have already been fully, fairly, and finally adjudicated in a prior state court action. Interstate also argues that some aspects of Piggly Wiggly's conspiracy claim are ripe for summary judgment because Piggly Wiggly has failed to provide sufficient evidence to create a genuine issue of material fact. Having carefully considered the submissions of the parties in light of the applicable law, the court concludes that Interstate's motion should be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

This is a civil antitrust action in which Piggly Wiggly alleges that Interstate, through its predecessor Continental Baking Company, conspired with its competitors in the bread industry to fix the prices of bread and cake products in the state of Texas and designated areas in surrounding states. Resolution of Interstate's summary judgment motion requires the court to review the procedural history of both this case and the related state court case.

### A. The Federal Case

The genesis of this lawsuit can be traced back to at least 1994 when the United States Department of Justice launched an investigation into alleged criminal price-

fixing activities in the Texas bread industry. As a result of that investigation, one prominent Texas bread company, Mrs. Baird's Bakeries, Inc. ("Mrs.Baird's"), was prosecuted for price-fixing in 1996. On October 16, 1995, while the criminal case against Mrs. Baird's was developing, Piggly Wiggly Clarksville, Inc., filed a civil class action lawsuit in the Eastern District of Texas, Paris Division, asserting that Mrs. Baird's engaged in a conspiracy to fix the prices of bread products in Texas. Approximately nine days later, Abraham's Food Town, Inc., and other entities filed a similar complaint against Mrs. Baird's and several other companies in the Marshal Division of the Eastern District of Texas. The Piggly Wiggly and Abraham actions were subsequently consolidated and, on March 6, 1996, an Amended and Consolidated Complaint was filed that added additional defendants, including Interstate, and expanded the geographic boundaries of the alleged conspiracy to include contiguous markets outside of Texas.[1]

Shortly after Piggly Wiggly's amended complaint was filed and not long after Mrs. Baird's was convicted of price-fixing, Mrs.

Baird's filed for Chapter 11 bankruptcy protection. Soon thereafter, Piggly Wiggly (and the plaintiffs in the parallel state court case) reached settlement agreements with all defendants except Interstate. After approving those agreements and certifying a settlement class pursuant to Rule 23 of the Federal Rules of Civil Procedure, U.S. District Judge William Wayne Justice signed an order that dismissed all claims against the settling defendants and severed the remaining claims against Interstate. The case was then transferred to the undersigned judge on January 16, 1997, with Interstate as the only remaining defendant.

■ Because Piggly Wiggly no longer asserts its state law claims,[2] the primary claim advanced in this case is that Interstate violated § 1 of the Sherman Antitrust Act[3] by conspiring with its competitors to fix the prices of bread and bread products throughout Texas and in "contiguous market areas ... around Shreveport, Louisiana and Roswell, New Mexico."[4] Piggly Wiggly also asserts that Interstate fraudulently concealed its illegal activities

1. *See* Piggly Wiggly's Amended and Consolidated Complaint (hereinafter "Pls.' Compl.") at 6.

2. *See* Piggly Wiggly's Memorandum in Opposition to Defendant Interstate Brands Corporation's Motion for Summary Judgment (hereinafter "Pls.' Memo.") at 3 n. 3.

3. 15 U.S.C. § 1

4. Pls.' Compl. at 6. Interstate's summary judgment motion characterizes Piggly Wiggly's claim as asserting that the relevant geographic market also encompassed parts of Arkansas and Oklahoma. *See* Interstate's Motion for Summary Judgment (hereinafter "Dft.'s Motion") at 2. Its view is apparently based on the fact that Piggly Wiggly's Proposed Final Pretrial Order includes those two states in its statement of the nature of its case. *See* Affidavit of Jerry L. Beane (hereinafter "Beane Aff.") attached to Dft.'s Motion, Ex. 3 at 3–4. Yet, the only live pleading before the court in this case is Piggly Wiggly's Amended and Consolidated Complaint, which makes no reference to Arkansas or Oklahoma. *See* Be-

ane Aff., Ex 4. To be sure, Rule 16 of the Federal Rules of Civil Procedure provides that a joint final pretrial order that has been entered by the court "control[s] the subsequent course of the action unless modified by subsequent order." As succinctly stated by another judge in this District, "the pretrial order supersedes all prior pleadings, serving, in effect, as the operative answer and complaint in the case." *United States v. Texas*, 523 F.Supp. 703, 720 (E.D.Tex.1981) (Justice, J.) (citing *Morales v. Turman*, 535 F.2d 864, 867 n. 7 (5th Cir.1976), *rev'd on other grounds*, 430 U.S. 322, 97 S.Ct. 1189, 51 L.Ed.2d 368 (1977)). *See also F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1325 (5th Cir.1994); *Syrie v. Knoll Int'l*, 748 F.2d 304, 308 (5th Cir.1984); *Pacific Indem. Co. v. Broward County*, 465 F.2d 99, 103 (5th Cir.1972). But Piggly Wiggly's Proposed Final Pretrial Order has not been "entered" by this court, nor is it a "joint" order reflecting the agreement of the parties. That document thus cannot be said to supersede the Amended and Consolidated Complaint. Because Piggly Wiggly's live pleading does not assert any claims relating to Arkansas or Oklahoma, therefore, the court will limit its analysis to the matters actually pled.

to avoid detection. As defined by Piggly Wiggly's Amended and Consolidated Complaint, the term "bread and bread products includes but is not limited to bread, rolls, cakes and desert [sic] items." *Id.* The price-fixing conspiracy being alleged began on January 1, 1977, and continued through March 31, 1993.[5] Piggly Wiggly has filed a motion for class certification in which it seeks to represent a class of direct purchasers of bread products in the relevant geographic market. The court has thus far withheld ruling on that motion pending resolution of Interstate's summary judgment motion.

### B. The State Case

At the same time that this case was proceeding in federal court, a nearly identical class action lawsuit was filed against Interstate and three of its former employees in the 249th Judicial District Court of Johnson County, Texas.[6] The petition filed in the *Tucker* case asserted a conspiracy to fix the prices of bread products in violation of the Texas Free Enterprise and Antitrust Act of 1983, Tex.Bus. & Com. Code Ann. § 15.05(a), and Texas common law. On October 24, 1997, the state court certified a class that included "[a]ll persons and entities ... that purchased Bread Products within the State of Texas directly from Interstate Brands Corporation ... or

[its] respective predecessor companies or subsidiaries during the period of January 1, 1977 through March 31, 1993."[7] All named plaintiffs in the federal case were included in the class of *Tucker* Plaintiffs, with the apparent exception of Staggers Oil of Louisiana (hereinafter "Staggers").[8] The state court's order defined the term "bread products" to include "white bread, wheat bread, variety or specialty breads, hot dog buns, hamburger and other sandwich buns, and rolls."[9] The *Tucker* Plaintiffs' third amended petition also accused Interstate of fraudulent concealment.[10]

On June 10, 1998, the state case went to trial. Approximately two weeks later, a verdict was returned in favor of Interstate and its co-defendants. The jury specifically found that Interstate did not "knowingly bec[o]me part of a conspiracy ... to fix, control, raise, lower, maintain, or stabilize the prices of bread and bread products in Texas at any time during the period from 1977 to March 1993."[11] On the basis of that verdict, the state court entered a final judgment on July 30, 1998.[12] The *Tucker* Plaintiffs then filed a motion for new trial, asserting, inter alia, that they had obtained newly discovered evidence showing that Interstate engaged in price-fixing activities through its Cotton–Holsum division in Monroe, Louisiana. They argued that de-

---

5. Piggly Wiggly's complaint does not actually designate a specific concluding date for the alleged antitrust conspiracy. However, in correspondence sent to the court following a hearing on Piggly Wiggly's motion for class certification, the court was informed that Piggly Wiggly intended to designate March 31, 1993, as the ending date in order to "comport with the evidence." Beane Aff., Ex 2. The court also notes that Piggly Wiggly has made no effort to dispute Interstate's view, set out in its summary judgment motion, that the relevant period extends only through March 31, 1993. It is, perhaps, also telling that the same date was used as the concluding date in the parallel state case.

6. *See Tucker, et al. v. Interstate Brands Corporation, et al.*, No. 249–18–97, filed January 27, 1997 (Bridewell, J.).

7. Affidavit of Jack Baldwin (hereinafter "Baldwin Aff.") attached to Pls.' Memo., Ex. 7 at 2–3.

8. Piggly Wiggly's memorandum in opposition to Interstate's summary judgment motion indicates that Staggers purchased bread products from Interstate in Louisiana, not Texas. *See* Pls.' Memo. at 19 & 31. Taking that factual assertion to be true for purposes of the instant motion, Staggers would not have been considered a member of the *Tucker* Class, which included only purchasers of bread products within the state of Texas.

9. Baldwin Aff., Ex. 7 at 2.

10. *See id.*, Ex. 6.

11. Beane Aff., Ex. 1 at 11.

12. *See id.*, Ex. 7.

spite their best efforts to obtain all relevant discovery from Interstate prior to trial, Interstate wrongfully withheld documents regarding Cotton–Holsum that evidenced anti-competitive conduct by one of its former area sales managers, Dan Seabaugh. A hearing was held to consider the motion for new trial and, on October 12, 1998, the motion was denied by operation of law when the state district court allowed seventy-five days to pass without granting the motion.[13]

Following entry of the *Tucker* judgment, Interstate filed the instant motion for summary judgment in the federal case. As noted, that motion raises the affirmative defenses of res judicata and collateral estoppel, contending that the claim and issues asserted by Piggly Wiggly here are precluded from litigation because they were already unsuccessfully adjudicated in *Tucker*. Interstate's motion also attacks the sufficiency of the evidence Piggly Wiggly cites in support of its claim that Interstate's alleged conspiracy extended beyond Texas' borders. It is that motion to which the court now turns its attention.

## II. DISCUSSION

### A. Standard of Review

Interstate seeks a summary judgment in this case pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under that rule, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [14] To carry

its summary judgment burden, Interstate either must affirmatively offer evidence that undermines an essential element of Piggly Wiggly's case or must demonstrate that the evidence in the summary judgment record falls short of establishing an essential element of that case.[15] Once Interstate satisfies this initial burden, "the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." [16] A material fact issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [17] "In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." [18] Of course, all evidence must be viewed in the light most favorable to the nonmoving party and all reasonable inferences must be drawn in that party's favor.[19]

It is against the backdrop of these familiar standards that the court now turns its attention to the specifics of Interstate's summary judgment motion.

### B. Res Judicata Claim

 Interstate's first claim is that the *Tucker* judgment is res judicata to this lawsuit because the factual basis and legal theory underlying Piggly Wiggly's Sherman Act claim are essentially identical to the state antitrust claim that was fully litigated in *Tucker*. The doctrine of res judicata, or claim preclusion, provides that once a final judgment on the merits has

13. *See* Tex.R.Civ.P. 329b(c); Tex.R.Civ.P. 329b(e).

14. Fed.R.Civ.P. 56(c).

15. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

16. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (citation omitted).

17. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

18. *Douglass*, 79 F.3d at 1429.

19. *See Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

been entered in a case, the parties and their privies are precluded from ever relitigating claims that either were or could have been raised in that case.[20] "When a federal court is asked to give res judicata effect to a state court judgment, the federal court must determine the preclusiveness of that state court judgment under the res judicata principles of the state from which the judgment originates."[21] Because the *Tucker* judgment was entered by a Texas court, this court must apply Texas res judicata law. To establish the affirmative defense of res judicata under Texas law, Interstate must prove "(1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of the parties or those in privity with them, and (3) a second action based on the same claims as were raised or should have been raised in the first action."[22]

As to the first of these elements, Interstate notes that there is no dispute that the *Tucker* judgment is final, that it was rendered on the merits, and that it was entered by a court of competent jurisdiction. Interstate next contends that because it was a defendant in *Tucker* and each named plaintiff in this case also was a class member in *Tucker*, the identity of parties requirement is satisfied. Interstate disputes Piggly Wiggly's assertion that Staggers purchased bread products in Louisiana rather than Texas.[23] Finally, Interstate argues that this action is based on the same claims that were raised or should have been raised in the earlier state court action. It insists, for example, that the claim actually litigated in *Tucker* — whether Interstate conspired with its competitors to fix the prices of bread products from January 1977 through March 1993 —

is fundamentally identical to the issue Piggly Wiggly seeks to litigate here. The only significant difference, according to Interstate, is that *Tucker* asserted violations of state antitrust law whereas this case asserts violations of parallel provisions of federal antitrust law. It argues that allowing Piggly Wiggly to relitigate its conspiracy claim in this case after the same claim was or should have been litigated in *Tucker* would be tantamount to giving it a "second bite at the apple."

Interstate acknowledges that in this case Piggly Wiggly has added the claim that Interstate conspired to fix the prices of cakes and dessert items (hereinafter "cake products") and that the alleged conspiracy extended beyond Texas' borders to neighboring states. It argues, however, that those additional claims are nonetheless precluded because they arise out of the same subject matter as the claim adjudicated in *Tucker*. Interstate points out that Texas courts follow the "transactional approach" of the Restatement (Second) of Judgments, under which a "subsequent suit will be barred [by res judicata] if it arises out of the same subject matter of a previous suit."[24] It further notes that under Texas law, the subject matter of a previous suit consists of "the factual matters that make up the gist of the complaint, ... [and that] [a]ny cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit."[25] In Interstate's view, therefore, the additional facts asserted by Piggly Wiggly in this case—that Interstate conspired to fix cake product prices in Texas and to fix the prices of bread and cake products in the contiguous areas of

---

**20.** See *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citation omitted).

**21.** *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir.1996).

**22.** *Id.* (citing *Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex.1979)).

**23.** See Interstate's Reply Brief in Support of Motion for Summary Judgment (hereinafter "Dft.'s Reply") at 6–7.

**24.** *Jones*, 82 F.3d at 1342 (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex.1992)).

**25.** *Id.* (quoting *Barr*, 837 S.W.2d at 630).

bordering states—clearly arise out of the same subject matter as the *Tucker* litigation and should have been litigated in the prior suit. All of Piggly Wiggly's claims in this case should thus be precluded according to Interstate.

■ In response to these arguments, Piggly Wiggly contends that Interstate's invocation of the doctrine of res judicata is flawed on both procedural and substantive grounds. In their procedural challenge, Piggly Wiggly argues that because res judicata and collateral estoppel are defenses that must be "set forth affirmatively" under Federal Rule of Civil Procedure 8(c), Interstate has waived the right to assert them here by failing to file an amended answer following the *Tucker* verdict that added those defenses. While Piggly Wiggly is correct that Rule 8(c) requires that affirmative defenses be specifically pled, strict compliance with that rule will be excused under certain circumstances. For example, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."[26] Here, the court finds that Piggly Wiggly has implicitly consented to try the issue of res judicata and collateral estoppel. As Interstate points out, the issue of *Tucker*'s potential preclusive effect in this case has been the subject of hearings before this court since at least April 15, 1998. Additionally, the Agreed Scheduling Order submitted jointly by the parties on August 21, 1998, contemplated the assertion of res judicata and collateral estoppel defenses in Interstate's then-forthcoming summary judgment motion, and Piggly Wiggly incorporated those defenses in its Proposed Final Pretrial Order filed on July 31, 1998. Under these circumstances, Interstate is excused from the pleading requirements of Rule 8(c) and the court will consider its res judicata and collateral estoppel defenses.

■ In its substantive attack on Interstate's affirmative defense of res judicata, Piggly Wiggly advances a host of reasons for finding its conspiracy claim not precluded. Chief among those is the assertion that the "prior jurisdictional competency" rule renders res judicata inapplicable here because Sherman Act claims are within the exclusive jurisdiction of the federal courts. Piggly Wiggly cites *Marrese v. American Academy of Orthopaedic Surgeons*,[27] for the proposition that a state court judgment will not preclude a subsequent cause of action filed in federal court if the state court would have lacked subject matter jurisdiction to entertain the federal claims. Because the court agrees that the prior jurisdictional competency rule is dispositive of Interstate's res judicata defense, Piggly Wiggly's remaining arguments in opposition to that defense need not be addressed.

The parties agree that the seminal Supreme Court opinion addressing the res judicata effect of a state court judgment in a later federal action is *Marrese*. That case "provides the analytical framework for deciding whether [a state] court's judgment precludes [an] exclusively federal action."[28] In *Marrese*, the Supreme Court addressed the question of whether a state court judgment based on Illinois common law had preclusive effect on a subsequent claim brought in federal court under the Sherman Act. A plurality of the Seventh Circuit sitting en banc concluded that the Sherman Act claims were precluded as a matter of federal law because the plaintiffs could have brought antitrust claims in the first case under a state statute that was "materially identical" to the Sherman Act. Finding that the Seventh Circuit plurality failed to apply the claim preclusion rules of

**26.** Fed.R.Civ.P. 15(b).

**27.** 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

**28.** *Matsushita Electric Industrial Co. v. Epstein*, 516 U.S. 367, 375, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996).

the state of Illinois, however, the Supreme Court reversed. The court explained that the preclusive effect of a state court judgment is determined by the Full Faith and Credit Act,[29] which requires federal courts to accord state court judgments the same preclusive effect they would receive in the courts of the rendering state.[30] The court further explained that if the claim sought to be precluded is within the exclusive jurisdiction of the federal courts, res judicata will apply only if the rendering state does not employ the prior jurisdictional competency rule.[31] Endorsing the view expressed in the Seventh Circuit's dissenting opinion and that of various legal commentators, the *Marrese* court held: "To the extent that state preclusion law indicates that a judgment normally does not have claim preclusive effect as to matters that the court lacked jurisdiction to entertain, . . . a state court judgment does not bar a subsequent federal antitrust claim."[32]

Under *Marrese*, therefore, the court is required to determine whether Piggly Wiggly's Sherman Act claim would be barred under Texas preclusion law had it been filed in state court. In effect, the court must answer the hypothetical question of whether Texas courts would give their judgments preclusive effect over federal claims that they have no subject matter jurisdiction to entertain. If, as *Marrese* indicates should be expected,[33] Texas preclusion law requires that the *Tucker* court have subject matter jurisdiction for

res judicata to apply, then Piggly Wiggly's Sherman Act claim is not precluded.

### 1. *Texas Claim Preclusion Law*

Turning to a review of state law, the court first notes that, not surprisingly, there are no cases specifically addressing the preclusive effect of a state court judgment on matters within the exclusive jurisdiction of the federal courts.[34] Still, the available authorities strongly support the conclusion that Texas res judicata rules do include a jurisdictional competency requirement. For example, the Texas Supreme Court has articulated state res judicata law as follows: "[A]n existing final judgment rendered upon the merits by a court of competent jurisdiction *upon a matter within its jurisdiction* is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit."[35] By definition, the phrase "upon a matter within its jurisdiction" necessarily implicates the jurisdictional competency of the court rendering the first judgment. The sentence in *Abbott* that immediately follows that phrase also implies a jurisdictional competency requirement: "Further, the rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, *might have been tried* in a former action as well as those which were actually tried."[36] Common sense would suggest that a claim over which a court lacks subject matter jurisdiction would not qualify as one that "might have been tried" by that court.

---

29. 28 U.S.C. § 1738.

30. *See Marrese,* 470 U.S. at 380–81, 105 S.Ct. 1327.

31. *See id.* at 382–83, 105 S.Ct. 1327.

32. *Id.* at 383, 105 S.Ct. 1327.

33. *See id.* at 382–83, 105 S.Ct. 1327 (emphasizing that it is "generally true" that state preclusion law requires prior jurisdictional competency and that it would be "contrary to the usual view" for a state to not include such a requirement).

34. *See id.* at 381–82, 105 S.Ct. 1327 (noting that state courts typically "will not have occasion to address the specific question whether a state judgment has . . . claim preclusive effect in a later action that can be brought only in federal court").

35. *Abbott Lab. v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971) (emphasis added).

36. *Id.* (emphasis added).

Thus, it appears that Texas' highest court adheres to the rule that claim preclusion does not foreclose a claim beyond the jurisdiction of the court rendering judgment. *Abbott* is consistent with the position taken by Texas courts that preceded it [37] and continues to be relied upon by state appellate courts as a correct statement of the law.[38] The view that Texas follows the prior jurisdictional competency rule finds additional support in the opinions of intermediate appellate courts in Texas. For example, one such court has plainly stated: "Res judicata does not bar a claim if the court rendering judgment in the initial suit lacked subject-matter jurisdiction over the claim." [39] Similarly, Texas courts have held that a federal court judgment does not preclude subsequent state court claims over which the federal court either could not or did not exercise jurisdiction.[40]

Although there are no reported federal cases that specifically address whether Texas follows the prior jurisdictional competency rule, the Fifth Circuit has stated: "It is black-letter law that a claim is not barred by res judicata ... [i]f the court rendering judgment lacked subject-matter jurisdiction over [the] claim...." [41] More-

**37.** *See, e.g., Foster v. Wells,* 4 Tex. 101, 1849 WL 3975, at *1 & *2 (1849) (holding that claim preclusion applies only to matters that were actually litigated and "to every other matter which the parties might litigate in the cause, and which they might have had decided"); *Moore v. Snowball,* 98 Tex. 16, 81 S.W. 5, 8 (1904) (same); *Davis v. First Nat'l Bank of Waco,* 139 Tex. 36, 161 S.W.2d 467, 473 (Tex. Comm'n App.1942, judgm't adopted) (noting that "a judgment is not conclusive of a question which could not have been adjudicated in the case in which it was rendered"); *White v. White,* 149 S.W.2d 1031, 1033–34 (Tex.Civ.App.—Waco 1941, writ ref'd) (holding that "matters which could not be passed on in the former suit are not res adjudicata under the judgment"). *See also Flores v. Edinburg Consolidated Independent School Dist.,* 741 F.2d 773, 775 (5th Cir.1984) (observing that "[t]he Texas law of res judicata is traceable at least back to *Foster v. Wells,* 4 Tex. 101 (1849), and has not changed significantly since that time").

**38.** *See, e.g., Orange County Dev. Co. v. Orange County Appraisal Dist.,* 810 S.W.2d 884, 886–87 (Tex.App.—Beaumont 1991, no writ); *Public Utility Comm'n of Texas v. Coalition of Cities for Affordable Utility Rates,* 776 S.W.2d 224, 226 (Tex.App.—Austin 1989, no writ); *E & B Carpet Mills v. Texas,* 776 S.W.2d 286, 288 (Tex.App.—Austin 1989, writ dism'd by agr.); *West Oso Indep. Sch. Dist. v. Paisano Minerals, Inc.,* 661 S.W.2d 300, 301 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.); *Daly v. Bd. of Trustees of Laredo Mun. Jr. College,* 524 S.W.2d 410, 412 (Tex.Civ.App.—San Antonio 1975, no writ).

**39.** *Montgomery v. Blue Cross and Blue Shield of Texas, Inc.,* 923 S.W.2d 147, 150 (Tex. App.—Austin 1996, writ denied). *See also Harrison v. Gemdrill Intern., Inc.,* 981 S.W.2d 714, 718 (Tex.App.—Hous.1998, no writ) (noting that res judicata does not preclude claims over which the court rendering judgment in the initial suit lacked jurisdiction); *Attorney General of Texas v. Allred,* 871 S.W.2d 298, 300 (Tex.App.—Fort Worth 1994, no writ) (holding that a claim is not barred by res judicata if it could not have been brought in the court rendering the prior judgment); 48 Tex.Jur.3d Judgments § 394 (1998) (portraying the holding in *Montgomery* as the accepted view of Texas res judicata law).

**40.** *See, e.g., McKinney v. San Antonio Independent School Dist.,* 897 S.W.2d 879, 883 (Tex. App.—San Antonio 1995), *rev'd on other grounds,* 936 S.W.2d 279 (Tex.1996) (holding that prior federal court judgment was not res judicata to later state court action because federal court would have lacked jurisdiction to hear claims based on Eleventh Amendment immunity); *Fernandez v. Memorial Healthcare System, Inc.,* 896 S.W.2d 227, 232 (Tex.App.—Hous.1995, writ denied) (holding that federal court's adjudication of state law claims would be res judicata to subsequent effort to assert those claims in state court if "there is no jurisdictional obstacle to advancing state law claims" in the federal court); *El Paso Natural Gas Co. v. American Petrofina Co. of Texas,* 733 S.W.2d 541, 552 (Tex.App.—Hous.1986, writ ref'd n.r.e.) (holding that prior federal court judgment did not preclude litigation of state law claims over which federal court declined to exercise pendent jurisdiction because "[a] judgment rendered by a court having no jurisdiction of claims or rights asserted in a later case does not support a plea of res judicata or estoppel by judgment of claims made in the later case").

**41.** *Browning v. Navarro,* 887 F.2d 553, 558 (5th Cir.1989) (citing Restatement (Second) of

over, the court is aware of one opinion in which the Fifth Circuit held that a Texas judgment does not bar a later federal antitrust action that is within the exclusive jurisdiction of the federal courts.[42] Of course, because that case was decided without reference to Texas preclusion law its continuing validity on the res judicata issue is questionable in light of *Marrese*.[43] Still, these two Fifth Circuit cases are consistent with what *Marrese* described as the "usual view" of claim preclusion law and they mirror the position taken by the Restatement (Second) of Judgments.[44] This latter point is significant for two reasons. First, Texas courts consider the Restatement to be an accurate reflection of Texas res judicata law. Second, the Restatement specifically incorporates a jurisdictional competency requirement.

The regularity with which Texas courts cite to and rely on the Restatement (Second) of Judgments leaves little doubt that they view it generally as reflective of Texas claim preclusion law.[45] One of the more relevant examples of that reliance is found in *Jeanes v. Henderson*.[46] In that case, the Texas Supreme Court relied on § 25 of the Restatement to hold that an earlier judgment rendered by one court (a federal court in that instance) did not preclude relitigation of claims in a second court (a state court) if the first court would have lacked jurisdiction to consider the asserted claims.[47] The *Jeanes* court stated: "If, however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground ..., then a second action in a competent court

Judgments § 26(1)(c)). *See also Eichman v. Fotomat Corp.,* 759 F.2d 1434, 1440 (9th Cir. 1985) (Kennedy, J., concurring) (describing the prior jurisdictional competency rule as a "rule of near universal application"); *McCarter v. Mitcham,* 883 F.2d 196, 199 (3rd Cir. 1989) (noting that state courts "have nearly universally required subject matter jurisdiction in the first action as a prerequisite to barring the second action").

**42.** *See Hayes v. Solomon,* 597 F.2d 958, 984 (5th Cir.1979). *See also Hampton v. Long,* 686 F.Supp. 1202, 1205 (E.D.Tex.1988) (Justice, C.J.) (holding, without reference to Texas claim preclusion law, that exclusively federal Securities Exchange Act claims were not barred by prior state court judgment).

**43.** Piggly Wiggly also cites the court to *In re Lease Oil Antitrust Litigation,* 16 F.Supp.2d 744 (S.D.Tex.1998), *aff'd,* 200 F.3d 317 (5th Cir.2000), a case by a district court within this circuit that applied the prior jurisdictional competency doctrine. While that decision and the Fifth Circuit's opinion affirming the decision offer some insight into the applicability of *Marrese* under circumstances like the present, their analysis focuses on Alabama law and thus offers the court little guidance on the issue of whether Texas law contains a jurisdictional competency requirement.

**44.** *See Marrese,* 470 U.S. at 383, 105 S.Ct. 1327.

**45.** *See, e.g., HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 890 (Tex.1998) (citing § 54 of the Restatement for the rule that a judgment

against a holder of concurrent ownership interests in property is not res judicata against the other concurrent owner); *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993) (citing the subject matter jurisdiction provision found in § 11 of the Restatement); *Getty Oil Co. v. Insurance Co. of North America,* 845 S.W.2d 794, 798–802 (Tex.1992) (citing the various res judicata principles set out in §§ 23, 24, & 51 of the Restatement); *Barr,* 837 S.W.2d at 631 (adopting the "transactional approach" of § 24(2) of the Restatement for determining what claims "could have been litigated" in the prior suit); *Mower v. Boyer,* 811 S.W.2d 560, 562 (Tex.1991) (applying the requirement of finality set out in § 13 of the Restatement); *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 718 (Tex.1990) (applying the exceptions to the general claim splitting rules set out in § 25 of the Restatement); *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 519 (Tex.1984) (citing § 36(2) of the Restatement for the rule that "[a] party appearing in an action in one capacity, ... is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity"); *Hammonds v. Holmes,* 559 S.W.2d 345, 347 (Tex.1977) (citing the Restatement's identity of parties provisions); *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971) (applying the Restatement's rules on privity).

**46.** 688 S.W.2d 100 (Tex.1985).

**47.** *See id.* at 104.

presenting the omitted theory or ground should be held not precluded."[48] Although *Jeanes* examined the preclusive effect of a prior federal court judgment on a subsequent state court claim, § 25 of the Restatement expressly applies to the situation where the first judgment was rendered by a state court as well. Thus, the Texas Supreme Court's reliance on that provision lends further support to the view that Texas courts recognize a prior jurisdictional competency requirement.

Another provision of the Restatement espousing a jurisdictional competency requirement is § 26(1)(c), which provides that claims will not be precluded in a second action if they could not have been raised in the first action due to limitations on the subject matter jurisdiction of the court rendering the first judgment. The following illustration used to demonstrate the application of that provision is particularly significant in the present context:

> A Co. brings an action against B Co. in a state court under a state antitrust law and loses on the merits. It then commences an action in a federal court upon the same facts, charging violations of the federal antitrust laws, of which the federal courts have exclusive jurisdiction. The second action is not barred.[49]

Although the court found no reported cases where Texas courts expressly relied on § 26(1)(c), their widespread reliance on numerous related provisions of the Restatement permits one to conclude with some confidence that they would also embrace that section of the Restatement if presented with an opportunity to do so. The court also finds it significant that the U.S. Supreme Court found the above-mentioned illustration meaningful to its analysis in *Marrese*. In fact, the *Marrese* court elaborated on the illustration by noting:

> Moreover, the jurisdictional competency requirement generally is understood to imply that state court litigation based on a state statute analogous to a federal statute, e.g., a state antitrust law, does not bar subsequent attempts to secure relief in federal court if the state court lacked jurisdiction over the federal statutory claim.[50]

In light of all the above-cited authorities, and given the absence of any indication that Texas res judicata law does not contain the standard jurisdictional competency requirement, the court concludes that Texas courts would employ the prior jurisdictional competency rule under the circumstances of this case. Because the *Tucker* judgment would not be afforded claim preclusive effect over the present lawsuit under Texas law, therefore, Interstate's motion for summary judgment on the basis of res judicata must be denied.

## C. Collateral Estoppel Claim

 The second argument Interstate advances in favor of its summary judgment motion is that the *Tucker* judgment collaterally estops relitigation of the factual issue of whether it engaged in a price-fixing conspiracy. Under the doctrine of collateral estoppel—also known as issue preclusion—issues of fact that were actually litigated and necessary to the outcome of one action are precluded from relitigation in a second action.[51] In a nutshell, "[t]he doctrine of collateral estoppel is used to prevent a party from relitigating an issue that it previously litigated and lost."[52] "The doctrine applies when the party against whom collateral estoppel is asserted had a

---

48. *See id.* at 104 n. 4 (quoting Restatement (Second) of Judgments § 25 cmt. e (1982)).

49. Restatement (Second) of Judgments § 26(1)(c) cmt. c, illus. 2.

50. *Marrese,* 470 U.S. at 383 n. 3, 105 S.Ct. 1327.

51. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 328–29, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

52. *Quinney Elec., Inc. v. Kondos Entertainment, Inc.,* 988 S.W.2d 212, 213 (Tex.1999) (citing *Parklane Hosiery,* 439 U.S. at 329, 99 S.Ct. 645).

full and fair opportunity to litigate the issue in the prior suit." [53] Unlike res judicata, collateral estoppel applies irrespective of whether the claims being asserted are within the exclusive jurisdiction of the federal courts. [54] Under Texas law, collateral estoppel "bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based on the same cause of action." [55] Importantly, collateral estoppel extends only to matters that were actually adjudicated in an earlier lawsuit and not to matters that might have been raised. [56] To invoke this doctrine in Texas, a party must show that "(1) the facts to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the present parties were adversaries in the prior action." [57]

In the present case, Interstate argues that the first required element of collateral estoppel is satisfied because the ultimate issue of fact underlying Piggly Wiggly's antitrust claim—whether Interstate engaged in a single, grand price-fixing conspiracy—is the same in both *Tucker* and this case. Because that issue was fully and fairly litigated in *Tucker*, Interstate insists, it is foreclosed from reconsideration here. Piggly Wiggly responds that while its conspiracy claim in this case shares some common facts with the conspiracy claim asserted in *Tucker*, those claims are not identical. It notes that, unlike the state court petition in *Tucker*, its federal complaint asserts that Inter-

state conspired to fix the prices of cake products in Texas and to fix bread and cake product prices in contiguous markets outside of Texas. Because those issues were not actually litigated in *Tucker*, Piggly Wiggly contends, collateral estoppel cannot prevent them from being litigated here.

■ An issue is "actually litigated" for collateral estoppel purposes if it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." [58] The ultimate issue of fact raised by the pleadings, submitted for determination, and actually determined in *Tucker* was whether Interstate conspired to fix the prices of bread products *within the state of Texas* from January 1977 through March 1993. [59] By comparison, Piggly Wiggly's Amended and Consolidated Complaint in this case asserts that Interstate conspired to fix the prices of bread products within the state of Texas *and* "contiguous market areas ... around Shreveport, Louisiana and Roswell, New Mexico" from January 1977 through March 1993. [60] Similarly, the term "bread products" was narrowly defined in *Tucker* to include only "white bread, wheat bread, variety or specialty breads, hot dog buns, hamburger and other sandwich buns, and rolls," [61] whereas that term is defined more broadly in this case to include "bread, rolls, cakes, and desert [sic] items." [62]

Thus, Piggly Wiggly is correct that the issue of whether Interstate conspired to fix the prices of cake products in Texas or

53. *Eagle Properties*, 807 S.W.2d at 721 (quoting *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex.1988)).

54. *See Marrese*, 470 U.S. at 385, 105 S.Ct. 1327.

55. *Daniels v. Equitable Life Assur. Soc'y*, 35 F.3d 210, 213–14 (5th Cir.1994) (quoting *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984)).

56. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985).

57. *Mower*, 811 S.W.2d at 563.

58. *Van Dyke*, 697 S.W.2d at 384 (quoting Restatement (Second) of Judgments § 27 cmt. d).

59. *See* Baldwin Aff., Ex. 11 at 3.

60. *See* Pls.' Compl. at 6 & 9.

61. Baldwin Aff., Ex. 11 at 3,

62. Pls.' Compl. at 6.

to fix the prices of bread and cake products in contiguous markets outside of Texas was not "alleged, litigated, submitted to the jury or decided" in *Tucker.*[63] Although the facts that underlie Piggly Wiggly's conspiracy claim in this case are similar to those in *Tucker,* they are not identical. This is pivotal because collateral estoppel only precludes the relitigation of *identical* issues of fact or law that were actually litigated.[64] Inasmuch as Piggly Wiggly's allegations regarding cake products and antitrust activities in states other than Texas were neither actually litigated in *Tucker* nor essential to the *Tucker* judgment, the doctrine of collateral estoppel is powerless to preclude consideration of those specific issues in this lawsuit.

Interstate invites the court to follow the Ninth Circuit's holding in *In re Dual–Deck Cassette Recorder Antitrust Litigation,*[65] and to conclude that Piggly Wiggly should not be given another chance to prove a conspiracy that one jury already rejected merely by expanding their definition of "bread products" and widening the geographic boundaries of the alleged conspiracy. Interstate's reliance on *Dual–Deck,* however, is misplaced. In that case, the plaintiffs were attempting to reassert identical conspiracy claims in a second lawsuit that had been rejected by a jury in an earlier lawsuit. The plaintiffs argued that because the new lawsuit asserted that the conspiracy continued for a longer period of time than that alleged in the first action, collateral estoppel should not apply. The Ninth Circuit rejected that argument and held that the plaintiffs' claims were collaterally estopped because they merely asserted a continuation of conduct that had already been determined to not be unlawful.[66] Relying on the Fifth Circuit's opin-

ion in *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.,*[67] the court explained that to escape the effect of collateral estoppel, the plaintiffs' subsequent conspiracy claim must assert some change in facts or circumstances that would differentiate it from the claim unsuccessfully asserted in the previous lawsuit.[68]

In the present case, Piggly Wiggly, unlike the *Dual–Deck* plaintiffs, is not merely asserting a continuation of conduct that was found to be lawful in *Tucker.* The *Tucker* judgment does not answer the question of whether Interstate's activities in pricing cake products in Texas and bread and cake products in bordering states is conduct that violates the antitrust laws. To be sure, Piggly Wiggly is asserting additional facts and circumstances that differentiate it qualitatively from the conspiracy claim they failed to prove in *Tucker.* *Dual–Deck,* therefore, is inapposite to the instant case. Indeed, this case is analogous to *Harkins Amusement Enters. v. Harry Nace Co.,*[69] a case that the *Dual–Deck* court distinguished in reaching its decision. In *Harkins,* the Ninth Circuit rejected the defendant's assertion of collateral estoppel where the conspiracy claim being alleged differed only slightly from the claim rejected in a previous suit because the second lawsuit asserted at least some additional facts and circumstances not asserted in the earlier case.[70] In reaching its decision, the court explained that collateral estoppel focuses on whether the second lawsuit asserts changes in facts or circumstances from the first lawsuit.[71] As explained, Piggly Wiggly's federal action does that. Consequently, the court finds that the issue of whether Interstate conspired to fix the prices of cake products

---

**63.** Pls.' Memo, at 30.

**64.** *See Eagle Properties,* 807 S.W.2d at 721.

**65.** 11 F.3d 1460 (9th Cir.1993).

**66.** *See id.* at 1464.

**67.** 517 F.2d 110, 116 (5th Cir.1975).

**68.** *See id.* at 1463–64.

**69.** 890 F.2d 181 (9th Cir.1989).

**70.** *See Harkins,* 890 F.2d at 183.

**71.** *Id.*

in Texas and the issue of whether it conspired to fix bread and cake product prices in neighboring states are not collaterally estopped by the *Tucker* judgment.

This leaves open the question of whether the *Tucker* judgment collaterally estops relitigation of the narrow factual issue that was actually adjudicated in that case. Interstate asserts that the issue of whether it conspired to fix the prices of bread products within the state of Texas undoubtedly was fully and fairly litigated in *Tucker* and, thus, should be foreclosed from adjudication here. Piggly Wiggly quarrels with that assertion, arguing that while the *Tucker* jury did make specific findings of fact on that conspiracy issue, Interstate prevented the full and fair litigation of that issue by failing to disclose all relevant information during discovery in *Tucker*. As previously explained, Piggly Wiggly claims that Interstate chose to disregard the *Tucker* Plaintiffs' carefully worded document requests and interrogatories and failed to disclose its ownership of a Cotton–Holsum bakery in Monroe, Louisiana, that sold bread products in Texas during the relevant time period. Piggly Wiggly argues that as a result of this alleged misconduct, "the *Tucker* plaintiffs were unable to utilize any information relating to Cotton Holsum to demonstrate Interstate's participation in the price-fixing conspiracy." [72] It further asserts that documents since produced by Interstate in the federal case have led to the discovery of "a wealth of price-fixing evidence" inculpating Cotton–Holsum and Dan Seabaugh in anti-competitive activities. Accordingly, Piggly Wiggly insists that equitable considerations of fairness militate against giving any issue preclusive effect to the *Tucker* judgment.

In response to these arguments, Interstate denies that it committed any discovery abuses, asserts that Piggly Wiggly

knew of Interstate's ownership of Cotton–Holsum and the existence of Dan Seabaugh long before the *Tucker* trial, and refutes Piggly Wiggly's claim that the *Tucker* Plaintiffs were unable to utilize any Cotton–Holsum information at trial. To begin with, it notes that the very arguments Piggly Wiggly advances here were fully heard and rejected by the *Tucker* court in connection with the *Tucker* Plaintiffs' failed motion for new trial. [73] Further, Interstate explains that it did not produce documents relating to Cotton–Holsum in response to the *Tucker* Plaintiffs' initial discovery requests because it was being sued only in its capacity as the successor in interest to Continental Baking Company and it reasonably understood that the information being sought related to that entity alone. It notes that when Piggly Wiggly propounded supplemental discovery requests in the federal case that specifically sought information about Cotton–Holsum, the requested discovery was produced. Interstate also notes that those supplemental discovery requests were served on Interstate *before* the *Tucker* case went to trial.

Additionally, Interstate has submitted excerpts from the deposition testimony of Pat Coyle, Interstate's former Account Manager and one of its co-defendants in *Tucker*, showing that the *Tucker* Plaintiffs first became aware of Interstate's ownership of Cotton–Holsum and the fact that Cotton–Holsum sold bread products in Texas no later than August 8, 1997, nearly a year before the *Tucker* trial. [74] Similarly, Interstate has attached excerpts from the deposition of Steve Green, President of Flowers Baking Company, showing that the *Tucker* Plaintiffs were aware of Dan Seabaugh and his alleged involvement in anti-competitive activities no later than April 1998, almost two months before

---

72. Pls.' Memo. at 10–11.

73. *See* Affidavit of Kay Lynn Brumbaugh (hereinafter "Brumbaugh Aff.") attached to Dft.'s Reply, Ex. A(1).

74. *See* Brumbaugh Aff., Ex. A(1) at 11 and n. 8, and Ex. A(2).

*Tucker* went to trial.[75] Interstate argues that given the *Tucker* Plaintiffs' pretrial knowledge of Cotton–Holsum and Seabaugh, they could have specifically requested discovery on Cotton–Holsum as they did in the federal case, they could have moved to compel production if they believed Interstate's discovery responses were inadequate, or they could have sought a continuance if they believed more time was necessary to investigate Cotton–Holsum and Seabaugh. Interstate points out that the *Tucker* Plaintiffs took none of those steps. Finally, Interstate has submitted evidence showing that notwithstanding their assertion to the contrary, the *Tucker* Plaintiffs did present evidence and argument to the *Tucker* jury regarding Cotton–Holsum and Seabaugh as part of their case-in-chief, as well as during closing argument.[76]

The Restatement (Second) of Judgments speaks to the issue of a party's inability to fully and fairly litigate a claim due to alleged misconduct by an opposing party. Section 28 of the Restatement sets out exceptions to the general rule of issue preclusion. One of the exceptions contained in § 28 provides that relitigation of an issue actually litigated and determined by a valid prior judgment will not be precluded in a subsequent action if,

> There is a *clear and convincing* need for a new determination of the issue ... because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity ... to obtain a full and fair adjudication in the initial action.[77]

The italicized language makes clear that this exception to the general rule is intended to apply only in limited circumstances. The Comment to § 28 emphasizes this point by explaining that application of subsection (5) "must be the rare exception" and that the provision should be employed "only when the need for a redetermination of the issue is a compelling one."[78] The Comment goes on to explain that "a refusal to give the first judgment preclusive effect should not occur without a *compelling showing of unfairness*."[79] Texas courts have cited § 28 with approval on many occasions.[80]

In this case, the court finds no compelling showing of unfairness warranting the application of an exception to the doctrine of collateral estoppel. To begin with, Pig-

75. *See id.*, Ex. A(1) at 11 and n. 9, and Ex. A(2)(A) & (F).

76. The deposition testimony of Pat Coyle and Steve Green was presented to the jury during the *Tucker* trial, as were excerpts from Green's diary containing references to Seabaugh. *See* Brumbaugh Aff., Ex. A(2)(A), (B) & (D).

77. Restatement (Second) of Judgments § 28(5) (emphasis added).

78. *Id.* at § 28 cmt. g.

79. *Id.* at cmt. j (emphasis added).

80. *See, e.g., Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex.1994) (citing § 28(4) for the proposition that relitigation of an issue in a subsequent action is not precluded when the party against whom preclusion is sought had a significantly heavier burden of persuasion in the initial action); *Continental Cas. Co. v. Huizar*, 740 S.W.2d 429, 434 (Tex.

1987) (Gonzalez, J., dissenting) (citing § 28(1) for the rule that issue preclusion will not apply if the party against whom it is asserted did not have the right to appeal the earlier judgment); *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex.1986) (citing § 28(3) & (4) for the rule that relitigation of an issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or if the party against whom preclusion is asserted has a significantly heavier burden than he had in the first action); *Acker v. City of Huntsville*, 787 S.W.2d 79, 81 (Tex.App.—Hous.1990, no writ) (citing comment i of § 28 for the proposition that it is not necessary to the application of issue preclusion that the issue be one of "ultimate fact"); *Metropolitan Sav. and Loan Ass'n v. Tarter*, 730 S.W.2d 1, 5 (Tex.App.—Dallas 1987), *rev'd on other grounds*, 744 S.W.2d 926 (Tex.1988) (citing § 28(5) for rule that an issue is not precluded if there is a clear need for redetermination due to misconduct on the part of an opposing party that prevented a full and fair adjudication of the original action).

gly Wiggly's claim that Interstate prevented it from learning of Cotton–Holsum and Seabaugh in time to be helpful in *Tucker* is contradicted by the summary judgment evidence. As noted, Interstate has submitted uncontroverted evidence that Piggly Wiggly not only knew of Cotton–Holsum and Seabaugh long before the *Tucker* trial, but that evidence relating to Cotton–Holsum and Seabaugh was actually presented to the jury during that trial. Piggly Wiggly does not refute these facts. In fact, Piggly Wiggly concedes it received supplemental discovery responses from Interstate more than one month before the *Tucker* trial that identified Dan Seabaugh as an individual who might have knowledge relevant to the case.[81] Despite their pretrial awareness of Seabaugh, it appears that no effort was made by Piggly Wiggly or the *Tucker* Plaintiffs to contact or depose Seabaugh until the "midst of trial" in the state case.[82] In this connection, it must be remembered that collateral estoppel ensures a party's opportunity to fully litigate an issue, it does not give the party an unconditional right to relitigate settled matters whenever additional evidence becomes available. To again quote the Texas Supreme Court: "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair *opportunity* to litigate the issue in the prior suit."[83] Along these same lines, the Fifth Circuit has observed:

> To be sure, we recognize that whenever a court considers applying the doctrine

of collateral estoppel, there is always a lingering question whether the party might have succeeded in proving his point if he had only been given a second chance at producing evidence. Without more, however, this question is not sufficient to outweigh the extremely important policy underlying the doctrine of collateral estoppel—that litigation of issues at some point must come to an end.[84]

The court recognizes that as an equitable doctrine, collateral estoppel "involves considerations of fairness beyond those encompassed in the 'full and fair opportunity' scrutiny."[85] As the Restatement makes clear, however, the unfairness complained of must be "clear and convincing" and the denial of issue preclusion will not be warranted "without a compelling showing of unfairness."[86] In this case, even if Piggly Wiggly's assertion is correct that Interstate committed the discovery abuses alleged, which is far from clear, there is no compelling showing of unfairness to Piggly Wiggly or a clear and convincing need for redetermination of the conspiracy issue that was decided in *Tucker*. Indeed, the court agrees with Interstate that the "powerful new evidence" of antitrust activity by Cotton–Holsum that Piggly Wiggly wishes to present to a jury in this case is, for the most part, cumulative of the evidence that was already presented to the jury in *Tucker*.

---

**81.** *See* Pls.' Memo. at 10. It appears that the *Tucker* Plaintiffs may have actually become aware of Seabaugh much sooner than April 1998 given that Steve Green's diaries make reference to Seabaugh and transcripts from Green's first deposition taken in August 1997 suggest that counsel for the *Tucker* Plaintiffs had Green's diaries prior to the time of that deposition. *See, e.g.,* Baldwin Aff., Ex. 22 at 85.

**82.** *See id.,* Ex 13(3) at 3.

**83.** *Eagle Properties,* 807 S.W.2d at 721 (citation omitted) (emphasis added). *See also In re Bush,* 62 F.3d 1319, 1325 (11th Cir.1995) (noting that collateral estoppel applies when a

party had a full and fair opportunity to participate in an action even if he subsequently chooses not to do so); *In re Garner,* 56 F.3d 677, 680 (5th Cir.1995) (holding that even post-answer default judgment has preclusive effect under doctrine of collateral estoppel because the party had an opportunity to participate but chose not to do so).

**84.** *James Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F.2d 451, 463 (5th Cir.1971).

**85.** *Sysco Food,* 890 S.W.2d at 804.

**86.** Restatement (Second) of Judgments § 28(5) and cmt. j.

In sum, the court finds that Interstate has carried its burden of showing that the issue of whether it conspired to fix the prices of bread products in Texas has been fully and fairly litigated. Because that issue was clearly essential to the *Tucker* judgment and because Piggly Wiggly and Interstate were cast as adversaries in that case, collateral estoppel bars relitigation of that issue between these parties.[87] In so concluding, the court rejects Piggly Wiggly's assertion that Interstate intentionally misled the jury about its ownership of Cotton–Holsum during voir dire, as well as its suggestion that Interstate intentionally supplied the *Tucker* Plaintiffs with incorrect information about the address and telephone number of its former employee, Dan Seabaugh.[88]

### D. Insufficiency of the Evidence Claim

Interstate's final argument in favor of its motion for summary judgment is that the evidence in the summary judgment record fails to support the claim that it conspired to fix the prices of bread and cake products in Louisiana and New Mexico.[89] Interstate contends that Piggly Wiggly's complaint does not establish all the essential elements of a Sherman Act claim with respect to those markets. It argues, for example, that the deposition testimony of Dan Seabaugh shows that Cotton–Holsum did not engage in price-fixing in Loui-

siana.[90] And with regard to the state of New Mexico, Interstate claims that Piggly Wiggly has submitted no price-fixing evidence whatsoever, but has merely alleged that Interstate sold bread and cake products in that and other states. Such conclusory, unsupported allegations, it is argued, are legally insufficient to establish a Sherman Act claim or to survive a motion for summary judgment. Piggly Wiggly counters by asserting that it has presented substantial evidence showing that the same individuals involved in price-fixing in Texas also made pricing decisions in Louisiana and New Mexico.

As previously explained, when a summary judgment movant satisfies its burden of showing that the summary judgment record falls short of establishing an essential element of the nonmovant's case, the burden shifts to the nonmovant to identify specific evidence in the record demonstrating that there is a material fact issue concerning the challenged element.[91] Because "Rule 56 ... does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition" to summary judgment,[92] the court looks only to the evidence that the nonmovant calls to the court's attention. In this case, Piggly Wiggly is proceeding under § 1 of the Sherman Act.[93] "The elements required to

---

**87.** While this conclusion does not apply to Plaintiff Staggers to the extent that it was not a member of the *Tucker* Class, the point is inconsequential in light of Piggly Wiggly's assertion that Staggers did not purchase any bread products from Interstate in Texas. *See supra* text accompanying note 8. Similarly, it goes without saying that this portion of the court's ruling has no application to putative class members who were not members of the *Tucker* Class.

**88.** *See, e.g.,* Pls.'s Memo. at 23 & 27–8.

**89.** Interstate argues that Piggly Wiggly's claims relating to the states of Arkansas and Oklahoma likewise find inadequate support in the summary judgment record. However, because Piggly Wiggly has not properly pled a price-fixing conspiracy involving Arkansas or

Oklahoma, *see supra* text accompanying note 4, the court will disregard all arguments relating to those markets.

**90.** *See* Dft.'s Reply at 24–6 and evidence referenced therein.

**91.** *See Douglass,* 79 F.3d at 1429.

**92.** *Jones,* 82 F.3d at 1338.

**93.** Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1.

state a Section 1 claim are: (1) the existence of a conspiracy (2) affecting interstate commerce (3) that imposes an unreasonable restraint of trade."[94] "To satisfy the first element, pleadings must contain charges of the defendant['s] conspiracy and factual allegations that would support such a claim."[95] At issue here, therefore, is whether Piggly Wiggly has made sufficient factual allegations to support the claim that Interstate engaged in a conspiracy to fix the prices of bread and cake products in the states of Louisiana and New Mexico.

Beginning with Piggly Wiggly's allegations relating to Louisiana, the following evidence has been submitted in support of its claim that Interstate's alleged conspiracy encompassed that market:

1. Excerpts from the deposition of Stanley R. Oler, a former Sales Director at Mrs. Baird's, testifying that as part of his ongoing price-fixing arrangements with Steve Green, Green would also coordinate unlawful price changes with a representative of Cotton–Holsum in Louisiana;[96]

2. Excerpts from the deposition of Dan Seabaugh testifying (a) that he and another Cotton–Holsum employee had a meeting with a representative of Mrs. Baird's where he was given advance notice that Mrs. Baird's would soon be entering the Shreveport, Louisiana, market and was told that Mrs. Baird's did not intend to "muddy up the market" with its pricing, (b) that he then forwarded that information to his superiors, and (c) that Mrs. Baird's decision to sell its bread and cake products at Cotton–Holsum's prices had the effect of stabilizing market prices in Louisiana and Texas;[97]

3. Excerpts from the deposition of Lewis Pope, an Area Sales Manager for Cotton–Holsum, testifying that when Mrs. Baird's entered the Shreveport, Louisiana, market, they did so at the same prices that Cotton–Holsum was selling its products;[98]

4. Excerpts from the deposition of Melvin Hicks, former General Sales Manager for Cotton–Holsum, testifying that Flowers Baking Company and Cotton–Holsum always raised their prices on bread and cake products in unison during the period of 1976 to 1983, and that the Louisiana Attorney General's office questioned Interstate in 1991 about its submission of a sealed bid for supplying bread to a state work-release training center that was identical to a bid submitted by Flowers Baking Company;[99] and

5. Excerpts from the diary of Steve Green indicating that Green met with Dan Seabaugh in Tyler, Texas, on August 2, 1988, and then spoke with Stanley Oler twice the following day.[100]

When viewed in the light most favorable to Piggly Wiggly's claim, these factual assertions, while not overwhelming, are sufficient to create a genuine issue of material fact and to survive summary judgment. Although Interstate points to contrary evidence in the summary judgment record, all disputed facts and the reasonable inferences that can be drawn from them are to

94. *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 469 (5th Cir.1992).

95. *Id.*

96. *See* Baldwin Aff., Ex. 20 at 28–9, 45–6, 150.

97. *See id.*, Ex. 23 at 154–55, 157, 193, 199, 225–27.

98. *See id.*, Ex. 25 at 107.

99. *See id.*, Ex. 26 at 52, 170–71

100. *See id.*, Ex. 27.

be construed in Piggly Wiggly's favor.[101] Therefore, the court finds that Piggly Wiggly has alleged sufficient facts to support its claim that Interstate violated § 1 of the Sherman Act by engaging in a conspiracy to fix the prices of bread and cake products in the state of Louisiana.

■ The same cannot be said, however, of Piggly Wiggly's claim that Interstate conspired to fix the prices of bread and cake products in New Mexico. Other than simply offering its conclusory assertion that the alleged price-fixing conspiracy extended to New Mexico, Piggly Wiggly does not adequately develop that argument or present sufficient summary judgment evidence to bolster its complaint. The only evidence to which Piggly Wiggly has directed the court's attention is the deposition testimony of Stanley Oler. In that testimony, Oler merely states that Mrs. Baird's sold bread products into New Mexico and that he was "pretty sure" that the prices of Mrs. Baird's products in New Mexico conformed to the prices that Mrs. Baird's set in Texas.[102] The court finds that this minimal evidence is insufficient to support a jury finding that Interstate conspired to fix bread and cake product prices in New Mexico. It is well settled that a scintilla of evidence is not enough to avoid summary judgment.[103] As the Fifth Circuit recently noted: "Under modern summary judgment practice 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'"[104] The court finds that Piggly Wiggly's evidence regarding New Mexico falls into that category of evidence that is, at most, colorable and is insufficient to enable a reasonable jury to render a verdict in its favor. Construing the facts in the light most favorable to Piggly Wiggly does not require the court to credit otherwise unsupported assertions.[105] It should be remembered that "[o]ne of the principal purposes of ... summary judgment ... is to isolate and dispose of factually unsupported claims."[106] Because the court agrees with Interstate that Piggly Wiggly's claim relating to New Mexico lacks adequate factual support to create a genuine issue of material fact, that portion of Piggly Wiggly's complaint cannot survive Interstate's motion for summary judgment.

## CONCLUSION

For the reasons given and on the authorities cited, the summary judgment motion of Interstate Brands Corporation is GRANTED IN PART and DENIED IN PART as follows:

1. Interstate's motion for summary judgment on the basis of res judicata is **DENIED**;

2. Interstate's motion for summary judgment on the basis of collateral estoppel is **DENIED** as it pertains to Piggly Wiggly's claim that Interstate engaged in a conspiracy to fix the prices of cakes and dessert items within the state of Texas;

3. Interstate's motion for summary judgment on the basis of collateral estoppel is **DENIED** as it pertains to Piggly Wiggly's claim that Interstate engaged in a conspiracy to fix

**101.** *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

**102.** *See* Baldwin Aff., Ex. 20 at 47.

**103.** *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

**104.** *Wheeler v. Miller,* 168 F.3d 241, 247 (5th Cir.1999) (quoting *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505).

**105.** *See Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985) (holding that mere conclusory allegations are not competent summary judgment evidence).

**106.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

the prices of bread, rolls, cakes and dessert items within the state of Louisiana;

4. Interstate's motion for summary judgment on the basis of collateral estoppel is **GRANTED** as it pertains to Piggly Wiggly's claim that Interstate engaged in a conspiracy to fix the prices of white bread, wheat bread, variety or specialty breads, hot dog buns, hamburger and other sandwich buns, and rolls within the state of Texas; and

5. Interstate's motion for summary judgment on the basis of insufficient evidence is **GRANTED** as it pertains to Piggly Wiggly's claim that Interstate engaged in a conspiracy to fix the prices of bread and cake products within the state of New Mexico.

Any remaining matters raised by Interstate's summary judgment motion not expressly addressed above are hereby DENIED. It is so ORDERED.